## CALIFORNIA PACKING CORPORATION v. SUN–MAID RAISIN GROWERS OF CALIFORNIA.

Patent Appeal Nos. 3101–3103.

Court of Customs and Patent Appeals.

April 17, 1933.

Pillsbury, Madison & Sutro, of San Francisco, Cal. (Frank D. Madison and Marshall P. Madison, both of San Francisco, Cal., and William G. Henderson, of Washington, D. C., of counsel), for appellant.

Edward S. Rogers and William T. Woodson, both of Chicago, Ill. (Miller & Boyken,

of San Francisco, Cal., of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

LENROOT, Associate Judge.

These are appeals from three decisions of the Commissioner of Patents, dismissing three notices of opposition filed by appellant to the applications of appellee for the registration of a composite mark comprising the pictorial representation of the sun and within its circle or circumference a picture of a young girl, the words "Sun-Maid" appearing below the representation of the sun and the girl. The decisions of the Commissioner granted the registrations applied for.

In appeal No. 3101, the mark sought to be registered, in addition to the features above stated, has the feature of the representation of a tray or basket filled with grapes, held by the girl. The applications were filed pursuant to the provisions of the Trade-Mark Act of February 20, 1905 (15 USCA § 81 et seq.).

The goods upon which the marks of appellee are used comprise various kinds of food products, not including raisins.

It was stipulated by counsel for the respective parties that the three proceedings be tried and determined together on the same record in the Patent Office, and a stipulation has been filed in this court that the three appeals may be considered and decided by this court on one record. Therefore we will dispose of the three cases in a single opinion; the issues of law and of fact in all three appeals being substantially the same.

Appellant in its notices of opposition alleged prior adoption and use of the trademark "Sun-Kist" upon goods of the same descriptive properties as those upon which appellee uses its mark; that it had obtained a number of registrations of said mark, setting forth the numbers thereof; that the marks "Sun-Kist" and "Sun-Maid" so nearly resemble each other that, when used upon goods of the same descriptive properties, they are likely to cause confusion or mistake in the mind of the public, to the damage of appellant; that on June 15, 1915, appellant's predecessor, the J. K. Armsby Company, brought suit in the United States District Court, Southern District of New York, against certain customers of appellee's predecessor, California Associated Raisin Company, and also against that company, to enjoin the use of the trade-mark "Sun-Maid" on raisins, claiming that such use was an infringement of the trade-mark "Sun-Kist" belonging to plaintiff; that, while said suit was pending, and in 1916, the said the J. K. Armsby Company sold and transferred to appellant all of the business, good will, and trade-marks of the former; that, following negotiations between the parties to said suit, and prior to the dismissal thereof, the California Associated Raisin Company, one of the parties to said suit, entered into an agreement with appellant, the said the J. K. Armsby Company, and others, under the terms of which it was agreed that the said California Associated Raisin Company should thereafter have the right to use said trade-mark "Sun-Maid" only on packages containing raisins or upon packages containing food products or confections made wholly or in part from raisins, and that said trade-mark, when so used, should also be accompanied by the name California Associated Raisin Company or the name Associated Warehouse Company as packer; that said contract further provided that, if said California Associated Raisin Company should sell or assign said trade-mark, or its right, title, and interest therein, its assignees should likewise be limited in the use thereof; that nothing in the contract should be construed to require the said the J. K. Armsby Company or appellant to relinquish its use of the trade-mark "Sun-Kist" in connection with the packing and sale of raisins or other food products; that said contract so entered into is in full force and effect, and that appellant and its predecessors have performed all of the conditions of said contract on their part, or on the part of any of them, to be performed; that on or about the 17th day of February, 1922, said California Associated Raisin Company changed its name to Sun-Maid Raisin Growers, and that on or about November 8, 1923, said corporation, under the name of Sun-Maid Raisin Growers, assigned and transferred unto Sun-Maid Raisin Growers of California, the appellee herein, its entire right, title, and interest in and to said trademark, together with the business and good will thereof of said Sun-Maid Raisin Growers, in connection with which said trademark was then being used; that said Sun-Maid Raisin Growers of California acquired, and now possesses, the said trade-mark "Sun-Maid" as the use thereof was limited as provided by the terms of said contract of March 10, 1917, and that said California Associated Raisin Company, or said Sun-Maid Raisin Growers, or said Sun-Maid Raisin Growers

of California, appellee herein, has never acquired and never owned any greater right to the use of said trade-mark "Sun-Maid" than was agreed upon by the terms of said contract.

Appellee in its answers to the notices of opposition denied that there was any deceptive resemblance between the marks "Sun-Kist" and "Sun-Maid," and alleged that the trade-marks for which it seeks registration were not acquired by assignment from the California Associated Raisin Company, but that applicant is the first user thereof, and its right thereto is based upon such adoption and use; that applicant had no knowledge of the alleged contract referred to in the notices of opposition until a few months before the filing of its applications, when an alleged copy thereof was furnished to applicant by opposer; that applicant was not a party to such contract, and is not bound thereby.

The answers also contain the following allegations: " * * * On or about August 1, 1923, applicant purchased from California Associated Raisin Company certain of its assets which were not sold to California Raisin Growers Association, the Delaware corporation, including the good will and trade-marks of California Associated Raisin Company, which assignment was followed by individual assignments of various trade-marks, which were duly recorded in the patent office. In 1924 the California Associated Raisin Company went into voluntary bankruptcy and ceased to do business."

The answers also challenged the construction put upon said contract by opposer.

Both parties took testimony, and the contract referred to in the pleadings was introduced in evidence.

It is established that said contract was entered into between appellant and the California Associated Raisin Company on March 10, 1917; that in 1922 the name of the corporation California Associated Raisin Company was legally changed to Sun-Maid Raisin Growers; that on August 1, 1923, said corporation, Sun-Maid Raisin Growers, as party of the first part, entered into a contract with appellee, as party of the second part, wherein and whereby, as stated in said contract—

"1. The first party does hereby sell, assign, transfer and set over unto the second party the business heretofore transacted by the first party of manufacturing, processing, warehousing, packing, shipping, marketing and selling raisins, together with the good will of said business and the entire right and title in and to each and every trade-mark, trade-name, copyright and label employed or owned by the first party. * * * * "

Said contract further provided that the said first party would execute the instruments necessary to vest in appellee the rights therein provided to enable the same to be recorded. It further appears that on June 3, 1924, said corporation, Sun-Maid Raisin Growers, was adjudged bankrupt, and such proceedings were thereafter had that the business, good will, and trade-marks of the bankrupt, including the right, title, and interest of the bankrupt in said trade-mark "Sun-Maid," were, pursuant to said agreement of August 1, 1923, sold, transferred, and set over to appellee, and appellee has ever since continued to carry on the raisin business and in connection therewith to use the trade-mark "Sun-Maid" so acquired by it; that appellee's first use of the trade-mark "Sun-Maid" upon food products other than raisins began in 1923. It does not appear that the officers of appellee, at the time of acquiring said trade-mark "Sun-Maid" from said corporation Sun-Maid Raisin Growers, had any knowledge of the existence of said contract of March 10, 1917, and the testimony is that said original contract was not in the files of appellee.

Both tribunals of the Patent Office held that the notices of opposition should be dismissed and the applications of appellee should be granted. The Examiner of Trade-Mark Interferences held that there was no confusing similarity between the marks of the parties, and that said contract of March 10, 1917, was not a bar to registration. Upon appeal, the Commissioner of Patents affirmed the holding of the Examiner that there was no confusing similarity between the marks, but declined to pass upon the legal effect of said contract of March 10, 1917. In his decision he said: "Each party has sought to construe this contract in its favor. It will be sufficient to here note that this contract, the construction of its terms, its effect as an estoppel and, in fact, any effect which it may have upon the instant proceedings, is not before this tribunal to determine. Skookum Packers Association v. Pacific Northwest Canning Company, 403 O. G. 515, C. C. P. A. The sole question here is whether the registration of the applicant's mark would damage the opposer by reason of probable confusion in trade."

We will first consider the matter relating to said contract of March 10, 1917, for, if the Commissioner was in error in his holding that said contract was not material to the question

of registration of appellee's marks, and if we should also find that said contract bars appellee from asserting ownership of said marks used upon goods named in its applications, then the decision of the Commissioner must be reversed and the oppositions sustained, rendering it unnecessary for us to consider the question of confusing similarity of the marks of the respective parties.

The Commissioner erred in holding that the legal effect of said contract of March 10, 1917, could not be considered by him, and the case of Skookum Packers' Association v. Pacific Northwest Canning Co., 45 F.(2d) 912, 18 C. C. P. A. 792, does not support his ruling. In that case we held that "parties can not, by their conduct or by any agreement, confer upon the Commissioner of Patents the power to do that which the law forbids." No such question is involved in the case at bar. Here the question is whether the terms of a contract prevent appellee from securing a registration which the statute might otherwise permit. In other words, in the Skookum Case we held that parties could not by their contract confer any right of registration which the law forbids, while in the case at bar the question is whether appellee is estopped from securing the registrations which it seeks.

The case of Hamilton, Brown Shoe Co. v. Sam B. Wolf Sons Co., 39 F.(2d) 272, 17 C. C. P. A. 921, is directly in point; we there held that a contract entered into between the applicant and a predecessor of the opposer barred the applicant from asserting any right to register the mark applied for.

Appellee's counsel, however, argues that in that case a simple contract between the parties was involved. In his brief he states:

"(2) *The Patent Office has no jurisdiction to decide controverted questions of the law of contracts.*

"The jurisdiction of the Patent Office is entirely statutory and certainly neither the Commissioner nor the Examiner of Interferences has been given authority to sit as a court to construe or apply agreements, the meaning of which and the parties to which are disputed. Perhaps in a case where there is an agreement between the parties before the Office defining their respective rights in the mark in issue and there is no dispute as to the terms of the agreement, its validity or who is bound by it, the Patent Office may take such a contract into consideration as it considers any other evidence before it. But where there is a dispute as to the interpretation of the contract or its legality or other matter of law, it is not the province of the Patent Office to sit as a court and decide the legal questions which might arise. The Office ought to, as it did in this case, keep itself within the four corners of the Act and refrain from excursions."

It is sufficient to say upon this point that, in passing upon questions within their jurisdiction, it is the duty of the Patent Office tribunals to apply legal and equitable principles in their determination.

In the case of In re Barratt's Appeal, 14 App. D. C. 255, it was stated, with respect to proceedings in the Patent Office, that they "are so nearly akin to judicial proceedings as to be most appropriately designated as quasi-judicial." See, also, American Fruit Growers, Inc., v. John Braadland, Ltd., 45 F.(2d) 443, 18 C. C. P. A. 790.

In an opposition proceeding, where ownership of a mark in the applicant is challenged, registration cannot be allowed without first determining that question. If an applicant has by contract divested himself of ownership of and the right to use a mark for which he makes application for registration, he is not the "owner" of the mark. Ownership is an indispensable element of the right of registration under the first clause of section 5 of the said Trade-Mark Act (15 USCA § 85). In re Bonide Chemical Co., Inc., 46 F.(2d) 705, 18 C. C. P. A. 909.

It therefore is plain that it was the duty of the Commissioner of Patents, and it is our duty, to consider said contract of March 10, 1917, for the purpose of determining whether appellee is the owner of the marks sought to be registered, as applied to the goods described in its applications.

It is the contention of appellee, with respect to said contract, that: (1) Appellee was neither a party to said contract, nor is it the successor in business to the California Associated Raisin Company, one of the parties to said contract, and therefore is not bound by the obligations assumed by said California Associated Raisin Company; (2) even if said contract is binding upon appellee, it does not prevent appellee from using its trade-mark "Sun-Maid" on the goods covered by the applications here involved; (3) if appellee's mark "Sun-Maid" infringes appellant's mark "Sun-Kist," its continued use under said contract is a fraud upon the public which has been acquiesced in by appellant.

Taking up first appellee's contention that it is not bound by the terms of said contract, it is clear, and appellee admits, that appellee's assignor of the trade-mark "Sun-

Maid," as applied to raisins, was bound by the terms thereof, and the question is whether appellee, as assignee of the trade-mark "Sun-Maid," applied to raisins, took the same subject to the conditions and limitations under which appellee's assignor had the right to use such mark, even though appellee, when it acquired the mark, may not have known of such limitations and conditions.

We think this question must be answered in the affirmative. The case of Waukesha Hygeia Mineral Springs Co. v. Hygeia Sparkling Distilled Water Co. (C. C. A.) 63 F. 438, is, we think, directly in point upon this branch of the case. It was there held that, quoting from the syllabus: "Where two parties have been using similar trade-marks, a contract between them whereby one party is to use one form of the trade-mark in connection with certain words, and the other is to use another form of it in connection with other words, followed by the use of such trade-marks for several years in accordance with the terms of the contract, establishes the rights of the parties, *and is binding upon their assigns and successors in business.*" (Italics ours.)

In that case the facts were that two parties using the word "Hygeia" in connection with their trade-marks entered into a contract defining the respective rights of each to the use of said word, and the manner in which it might be used by the respective parties. One of the parties subsequently transferred its trade-mark to another, who used the mark in a different manner from that provided in the contract. Such user alleged that he was a bona fide purchaser of the trade-mark without actual or constructive notice of the terms of said contract. In its opinion the court said, speaking of the rights of the assignee of the mark: "The purchase was not of the character which protects the buyer from equities existing against the seller. * * * The defendant can assert no monopoly in the name 'Hygeia' unless it can show right through the Smiths. No larger claim can be maintained than was possessed by the source of title, and the right is subject to the same equities, abandonment, or estoppel which could be asserted against the vendor."

While the particular question of the rights and obligations of an assignee of a trade-mark was not involved in the case of Hamilton, Brown Shoe Co. v. Sam B. Wolf Sons Co., supra, there was involved the question of the binding effect of a contract very similar to the contract here involved. In that case we quoted with approval the syllabus

from said Hygeia Case hereinbefore quoted. In the Hamilton, Brown Case, however, the applicant was not an assignee of a trade-mark, as here, but was a direct party to the contract.

Appellee's counsel in his very able briefs has cited no case directly in point upon the question here involved. The cases cited by him go to the point that an assignee is not bound to perform an affirmative, independent promise of the assignor unless he expressly or impliedly agreed to perform the same, or claims or accepts the benefits of a full performance of the contract. In the case at bar, there is not involved any obligations upon the part of appellee to perform any affirmative acts pursuant to the contract, but the question is whether the contract is binding upon it to restrain it from exercising or asserting rights which would exist but for such contract.

We think the case of Pratt et al. v. Wilcox Manufacturing Co. (C. C.) 64 F. 589, 590, is applicable in principle to the question before us. In that case it was held, quoting from the syllabus: "A firm having the right to manufacture under a patent agreed with another firm, owning rival patents, that it would not interfere with the latter, and that each would protect the other against third parties. Afterwards, the first-mentioned firm was merged in a corporation which succeeded to all its rights under the patent. Held, that the corporation took those rights burdened with the limitations and obligations imposed by the contract."

There is nothing in the opinion to indicate that the assignee corporation had notice of the contract.

To a like effect as the case above cited is the case of Walliser & Co. v. F. W. Maurer & Sons Co. (D. C.) 17 F.(2d) 122.

If appellant should now charge in a proper forum that appellee's use of the mark "Sun-Maid" upon raisins is an infringement of appellant's mark "Sun-Kist" because deceptively similar to it, it would seem that said contract would be a complete defense to such a charge; in other words, appellant would be bound by the contract with respect to appellee's right to use the mark "Sun-Maid" upon raisins. It would seem inequitable to hold that appellee might reap the benefits of said contract but not assume any of its burdens.

It is our opinion that appellee is bound by the terms of said contract, and, if its assignor could not, under said contract, use the mark "Sun-Maid" upon the goods named in appellee's applications, then appellee may

not do so, because, under the contract, appellee is not the owner of the mark, and was precluded from using the same as applied to such goods.

■■ Appellee, however, further contends that, even though said contract is binding upon it, the contract by its terms does not prevent appellee from using its "Sun-Maid" trade-mark on the goods covered by its pending applications. This contention is stated in the brief of its counsel as follows:

The contract provides, among other things, that the party of the first part, The California Associated Raisin Company, "desires that its right to use the said trade-mark 'Sun-Maid' in connection with the packing and sale of *raisins and food products or confections containing raisins* shall be established as against said The J. K. Armsby Company, or its successors or any one claiming through or under them the right to use said trade-mark 'Sun-Kist,' " and that the suit shall be dismissed upon the procurement "of an agreement on the part of said California Packing Corporation and The J. K. Armsby Company, that no claim shall be made hereafter that the trade-mark of the party of the first part, 'Sun-Maid,' when used in connection with the packing and sale of *raisins and food products or confections containing raisins* interferes with the trade-mark 'Sun-Kist,' " and The California Associated Raisin Company agrees that it "will use the said trade-mark 'Sun-Maid' only on packages containing *raisins or on packages containing food products or confections made wholly or in part from raisins,* and that said trade-mark when so used by the party of the first part shall always be accompanied by the name of the party of the first part, or 'the name 'Associated Warehouse Company' as packer."

Grammatically the phrase "containing raisins" in the connection "raisins and food products or confections containing raisins," as used in this contract, qualifies the word "confections," not the phrase "food products," and opposer has therefore agreed that it will not claim that the trade-mark "Sun-Maid," "when used in connection with * * * food products * * * interferes with the trade-mark 'Sun-Kist.' "

The construction contended for by appellee is, we think, clearly contrary to the intent of the parties as gathered from the entire instrument. The language in the contract to be construed reads: " * * * That it the party of the first part [The California Associated Raisin Company] will use the said trade-mark 'Sun-Maid' only on packages containing raisins or on packages containing food products or confections made wholly or in part from raisins. * * * "

Appellant's counsel points out that, under appellee's construction, the words "raisins, or on packages containing," are mere surplusage, for clearly raisins would be included if the language had read "only on packages containing food products."

The entire controversy in the suit in equity, out of which said contract grew, related to food products, the use of the mark "Sun-Maid" on raisins, and the use of the mark "Sun-Kist" on raisins and *other dried fruits.* Under appellee's construction, the only restriction placed by the contract upon appellee was not to use its mark upon confections *not* containing raisins, while confections of any character were not in any way mentioned in said suit.

While appellee relies upon rules of grammatical construction in construing the language of the contract above quoted, and cites the application of such a rule in the construction of a statute by the Supreme Court in the case of Bleistein v. Donaldson Lithographing Company, 188 U. S. 239, 23 S. Ct. 298, 47 L. Ed. 460, it is well established that the true sense of the words of a statute is to be determined by the nature of the particular provision and by the context, rather than according to strict grammatical construction. In re Bollman, 4 Cranch, 75, 2 L. Ed. 554.

We are clear that the true meaning of the language quoted from the contract, when considered in connection with the entire instrument, is that appellee's assignor agreed to use its mark "Sun-Maid" only on raisins, food products containing raisins, or confections containing raisins.

■ The next contention made by appellee is that, if appellee's mark infringes the mark of appellant, its continued use under said contract is a fraud upon the public which has been acquiesced in by appellant, and therefore appellant may not maintain its opposition proceedings herein.

With respect to this contention we would observe that the case of Hamilton, Brown Shoe Co. v. Sam B. Wolf Sons Co., supra, involved the validity of a contract very similar to the contract here considered. In litigation between the same parties, the Supreme Court had held that the marks "American Girl" and "American Lady" were confusingly similar when applied to shoes, and enjoined said Hamilton, Brown Company from further using said mark "American Lady" upon

shoes. Thereafter the parties entered into a contract which permitted the said Hamilton, Brown Company to use the mark "American Lady" upon women's shoes, with certain restrictions. We held that contract to be valid and binding in determining the rights of said Hamilton, Brown Shoe Company in said mark "American Lady." Such also was the contract in Waukesha Hygeia Mineral Springs Co. v. Hygeia Sparkling Distilled Water Co., supra. However, even if appellee's contention were correct, that, if the marks of the parties are confusingly similar, appellant has acquiesced in a fraud upon the public, and hence cannot maintain its oppositions to appellee's applications, it is sufficient to say that in such case the applications of appellee should be rejected under the well-established rule that in trade-mark opposition proceedings the Patent Office tribunals may dispose of any question relating to the proposed registration that might properly arise in an ex parte case. California Cyanide Co. v. American Cyanamid Co., 40 F.(2d) 1003, 17 C. C. P. A. 1198; California Canneries Co. v. Lush'us Products Co., 49 F.(2d) 1044, 18 C. C. P. A. 1480.

We hold that, by reason of said contract, concerning which we find no fraud upon the public, appellee was restricted in its use of its mark "Sun-Maid," and may not assert ownership of the same as applied to the goods described in its pending applications. Therefore the oppositions of appellant should be sustained, and the applications of appellee should be rejected.

The decisions of the Commissioner of Patents in the appeals before us are reversed.

Reversed.