28 C.C.P.A.(Patents)

## R. M. HOLLINGSHEAD CORPORATION v. DAVIES–YOUNG SOAP CO.

Patent Appeals Nos. 4484–4486.

Court of Customs and Patent Appeals.
June 30, 1941.

Leonard L. Kalish, of Philadelphia, Pa., for appellant.

Robb & Robb, of Washington, D. C. (John F. Robb and Harry C. Robb, both

of Washington, D. C., of counsel), for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Associate Judge.

These are appeals in three trade-mark opposition proceedings, in each of which the Commissioner of Patents reversed the decision of the Examiner of Interferences dismissing the notice of opposition of appellee, the commissioner holding in each case that the notice should be sustained and that appellant is not entitled to the registration for which it has made application.

On April 14, 1938, appellant filed, under the Trade-Mark Act of February 20, 1905, 15 U.S.C.A. § 81 et seq., three applications for the registration of its mark "Whiz" in association with a design.

Application serial No. 405,250 is for the registration of said mark applied to preparations for cleaning radiators and motor cooling systems and drain pipes, etc. Serial No. 405,252 is for the registration of the mark applied to varnish, stains, fillers, lacquers, etc., including "cleaning and polishing materials in paste, liquid, wax, powder, and solid forms, for automobiles, furniture," etc. Serial No. 405,253 is for the registration of the mark applied to soaps and "cleaning and polishing materials in paste, liquid, powder and solid forms for all surfaces," etc.

In each of the notices of opposition allegations were made that the goods of the parties to which the marks are applied are of the same descriptive properties; that on September 15, 1908, appellee's assignor registered the word "Whiz" as a trademark for soap under registration No. 70548, which registration was renewed to appellee on or about July 3, 1928; that by virtue of a contract entered into between appellant and appellee's assignor, dated October 2, 1912, all the right, title, and interest of appellant in said mark was conveyed to appellee's assignor, and now rests in appellee.

Appellant answered denying, inter alia, validity of appellee's mark relied upon. With respect to the said contract of October 2, 1912, the answer stated: "Further answering, applicant avers that the agreement of October 2nd, 1912 merely gave opposer's predecessor the right to use the mark 'Whiz' on grit paste soap only and that by said agreement of October 2nd, 1912 neither opposer's predecessor nor opposer acquired any right to use of the mark 'Whiz' for anything but grit paste soap, and applicant further avers that by said agreement of October 2nd, 1912 neither opposer nor opposer's predecessor acquired any right to register the mark 'Whiz.'"

Identical answers were filed in the three oppositions. Both parties took testimony.

The Examiner of Interferences dismissed the notices of opposition upon the ground that appellee, opposer, had not established ownership in itself of the involved mark, and that while said agreement of October 2, 1912, granted to appellee the right to use said mark, it did not grant to appellee, and appellee was not entitled to, the exclusive use thereof. Identical decisions were made by the Commissioner of Patents in the three oppositions. The commissioner in each of his decisions stated:

"These are appeals in three opposition proceedings in each of which the examiner of interferences dismissed the opposition of The Davies-Young Soap Company to the application of R. M. Hollingshead Corporation for registration of the word 'Whiz', in association with a design, as a trade-mark for merchandise described in the applications as including, respectively, 'preparations for cleaning radiators and motor cooling systems and drainpipes;' 'cleaning and polishing materials in paste, liquid, wax, powder, and solid forms;' and 'soaps in paste, liquid, powder or solid forms.'

"In 1908 opposer's assignor registered the word 'Whiz' as a trade-mark for soap. In 1911 applicant's predecessor in interest applied for registration of the same mark for the same goods. An interference was declared between the application and the registration, as a result of which the applicant was awarded priority of adoption and use of the mark and was adjudged to be entitled to its registration. Thereafter a written agreement was entered into between the parties to that proceeding, whereby opposer's assignor, for a valuable consideration, was given the right to use the mark in issue 'as applied to a grit paste soap.' The agreement was expressly made 'binding not only upon the parties hereto but upon their successors and assigns respectively.' Accordingly the opposer has continued to sell its grit paste soap under the trade-mark 'Whiz', applicant conceding the agreement to have remained in full

force and effect from the date of its execution, namely October 2, 1912. Parenthetically, it is significant to note that no attempt was made to procure the cancelation of the registration involved in the interference proceeding, which was renewed to opposer in 1928; whereas the registration issued to applicant's predecessor as a result of the judgment in the said proceeding was permitted to expire in 1932.

\* \* \* \* \* \*

"By the agreement of October 2, 1912, applicant's predecessor divested itself of the exclusive right to use the mark here sought to be registered, and thus ceased to be the owner of the mark, in the sense that it was entitled to the registration thereof, as applied to any goods of the same descriptive properties as those with which opposer's assignor thereby acquired the right to use such mark. To hold otherwise would be to ignore the requirement of section 2 of the Act, that, 'in order to create any right whatever in favor of the party filing it,' an application for registration of a trade-mark must be accompanied by a sworn declaration 'that no other person, firm, corporation or association, to the best of the applicant's knowledge and belief, has the right to use such trade-mark in the United States, either in the identical form or in such near resemblance thereto as might be calculated to deceive.' Having expressly granted to opposer 'the right to use such trade-mark in the United States,' it seems manifest that applicant could not truthfully make such a declaration.

"While the numerous articles of merchandise set forth in the applications here involved include many items differing in their descriptive properties from opposer's grit paste soap, clearly the items referred to above, and possibly some others, are of the same descriptive properties as opposer's said goods. It follows that applicant is not entitled to the registration it seeks, and the oppositions must therefore be sustained."

Amplifying somewhat the decision of the commissioner, the record discloses that the award of priority to appellant in said interference proceeding became final prior to October 2, 1912, the date of the contract between appellant and appellee's assignor hereinbefore referred to. Said contract reads as follows:

"This contract and agreement made in duplicate this 2nd day of October, 1912, between The R. M. Hollingshead Company of Camden, N. J., a corporation organized under the laws of New Jersey and The J. P. Davies Company, a corporation organized under the laws of Ohio, Witnesseth:

"First: The J. P. Davies Company is hereby given the right by mutual consent to use the word 'Whiz' under the following conditions:

"Second: There having been some controversy between said parties and in future may be controversy between other parties, it is hereby agreed that upon demand made by said The J. P. Davies Company to said The R. M. Hollingshead Company that said The R. M. Hollingshead Company will institute suits to protect the interests of The J. P. Davies Company granted under this Agreement in any jurisdiction and to the extent of using the name of The R. M. Hollingshead Company for that purpose upon further condition that all the expenses of said litigation, costs, etc., shall be paid by said The J. P. Davies Company.

"Third: The J. P. Davies Company agrees that it will not use the name of 'Whiz' on any kind of soap with the exception of the name 'Whiz' as applied to a grit paste soap similar to that now being manufactured by said The J. P. Davies Company and The R. M. Hollingshead Company hereby agrees from this date, not to use the word 'Whiz' as applied to a grit paste soap similar to that now manufactured by the said The J. P. Davies Company.

"Fourth: In consideration of the above agreement, the said The J. P. Davies Company agrees to pay the said The R. M. Hollingshead Company the sum of Seven Thousand Dollars, ($7,000) as follows:

"One Thousand Dollars ($1,000.00) in cash and twelve (12) notes of Five Hundred Dollars ($500.00) each, dated this 2nd day of October, 1912, payable in thirty (30) days to the order of The R. M. Hollingshead Company, in monthly installments at The Dayton National Bank.

"Fifth: It is further agreed and understood that the above contract is to be binding not only upon the parties hereto, but upon their successors and assigns respectively.

"In witness whereof, the said parties hereto, each having been duly authorized by its Board of Directors to enter into

this Contract, have signed their names this 2nd day of October, 1912. * * *"

It will be observed that appellant purported to convey to appellee's assignor no business or good-will, but only the naked right to use the mark "Whiz" as applied to a grit paste soap, and appellant agreed not to use said mark upon such soap. For the right so attempted to be conveyed, appellee's assignor paid appellant $7,000. There appears to have been no other consideration for such payment.

Between the time when the award of priority to appellant was made in the interference proceeding and the date of execution of said contract, appellant could have brought a proceeding under section 13 of the Trade-Mark Act, 15 U.S.C.A. § 93, to cancel the registration of appellee's assignor involved in the interference, and under the doctrine of res judicata appellant would have been entitled to such cancellation. Williams Oil-O-Matic Heating Corporation v. Butler Co., 39 P.2d 693, 17 C.C.P.A., Patents, 934; Panhard Oil Corporation, etc., v. Société Anonyme Des Anciens, etc., 39 F.2d 496, 17 C.C.P.A., Patents, 971.

This, however, appellant failed to do, and after the execution of said contract appellant could no longer rely upon the award of priority to it in the interference proceeding, for in such contract appellant voluntarily relinquished for a consideration of $7,000 its exclusive right to use the mark "Whiz" upon grit paste soap. Neither has appellant, so far as the record discloses, sought to cancel the renewal of said trade-mark registration issued to appellee.

It is elementary that the validity of a registered mark cannot be challenged in an opposition proceeding. Jacob Englander, etc., v. Continental Distilling Co., 95 F.2d 320, 323, 25 C.C.P.A., Patents, 1022, and cases cited. In said case we further stated: "It was pointed out in our decisions in some of those cases that the Congress specially provided, in section 13 of the Trade-Mark Act, supra, 15 U.S.C.A. § 93, for proceedings for the cancellation of a trade-mark registration by one who deemed himself injured by such registration, and that, if an interested party desired to question the validity of a trade-mark registration, he should proceed in accordance with the provisions of that section."

We might content ourselves with affirming the decisions appealed from upon this ground alone, but we are also of the opinion that, by virtue of said contract between appellant and appellee's assignor, appellant is estopped from claiming that it has the right to the exclusive use of the mark "Whiz" upon soap and upon other goods of the same descriptive properties. Appellant voluntarily divested itself of the right to the exclusive use of the mark "Whiz" applied to a particular kind of soap, viz., a "grit paste soap," and in consideration thereof was paid $7,000 by appellee's assignor.

Appellant, for a valuable consideration, abandoned its right to use the mark "Whiz" upon grit paste soap, and it may no longer claim that it has the right to the exclusive use of said mark upon soap generally or other cleaning preparations which would include grit paste soap. So far as appellant is concerned, appellee has the right to use the mark "Whiz" upon grit paste soap, and by the very terms of the trade-mark statute appellant has not the right to register the same mark upon any goods having the same descriptive properties as grit paste soap. We are in agreement with the Commissioner of Patents that certain of the goods involved in each of appellant's applications before us possess the same descriptive properties as grit paste soap.

Section 2 of the Trade-Mark Act requires that, in order for an application to create any right whatever in favor of the party filing it, verified declaration must be made by the applicant that, to the best of his knowledge, no other person, firm, or corporation has a right to use the mark applied for. Having received $7,000 from appellee's assignor as the consideration for the conveyance to the latter of the right to use said mark upon grit paste soap, appellant cannot now properly claim that no other person, firm, or corporation has the right to use the mark upon goods of the same descriptive properties.

Appellant's brief states: "It is well established that a licensor who grants a limited license to use a trade mark for certain specific goods does not, in any way, lose his ownership or right of registration of the mark for all goods not expressly licensed, and courts will fully enforce such license agreements."

A number of cases are then cited as supporting the above-stated proposition, but none of them do support it, in so far as

the right of registration of a mark by a licensor is concerned. One of such citations is the case of California Packing Corporation v. Sun-Maid Raisin Growers of California, 81 F.2d 674, 677, a decision of the Circuit Court of Appeals, Ninth Circuit. Instead of supporting appellant's contention with respect to registration, the court there stated: " * * * The purpose and effect of the contract of March 10, 1917, was to define the relative rights of each in its respective trade-marks. The appellee limited its right of ownership in the trade-mark 'Sun-Maid' to the use of it in connection with raisins and raisin products. The contract so states. This view was adopted by the Court of Customs and Patent Appeals in litigation before that court between the parties hereto [California Packing Corporation v. Sun-Maid Raisin Growers of California (Cust. & Pat.App.) 64 F.(2d) 370, 373], where the appellant was contesting the right of the appellee to register the trade-mark 'Sun-Maid' as to other than raisin products. That court held that the contract of March 10, 1917, gave the Sun-Maid Company only limited ownership in the trade-mark 'Sun-Maid' and that it could not register the mark for any other product. The court said: 'If an applicant has by contract divested himself of ownership of and the right to use a mark for which he makes application for registration, he is not the "owner" of the mark. * * * Under the contract, appellee is not the owner of the mark, and was precluded from using the same as applied to such goods.' "

In the case of California Packing Corporation v. Sun-Maid Raisin Growers of California, 64 F.2d 370, 373, 20 C.C.P.A., Patents, 968, referred to in the above quotation, we stated: "The Commissioner erred in holding that the legal effect of said contract of March 10, 1917, could not be considered by him, and the case of Skookum Packers' Association v. Pacific Northwest Canning Co., 45 F.(2d) 912, 18 C.C.P.A. [Patents] 792, does not support his ruling. In that case we held that 'parties can not, by their conduct or by any agreement, confer upon the Commissioner of Patents the power to do that which the law forbids.' No such question is involved in the case at bar. Here the question is whether the terms of a contract prevent appellee from securing a registration which the statute might otherwise permit. In other words, in the Skookum

Case we held that parties could not by their contract confer any right of registration which the law forbids, while in the case at bar the question is whether appellee is estopped from securing the registrations which it seeks.

"The case of Hamilton, Brown Shoe Co. v. Sam B. Wolf Sons Co., 39 F. (2d) 272, 17 C.C.P.A. [Patents], 921, is directly in point; we there held that a contract entered into between the applicant and a predecessor of the opposer barred the applicant from asserting any right to register the mark applied for.

Finally, upon this branch of the case, from "Nims on Unfair Competition and Trade-Marks," under the section entitled "License of trade-marks and granting right to their use temporarily," we quote from page 68 the following " * * * A lease or license of a mark apart from its business with which it is used, constitutes an abandonment of the mark and rightfully so."

▮ Appellant makes one further contention which will be briefly considered. It is that the mark in question is a "collective trade-mark" and that under the provisions of section 1 of said Trade-Mark Act, as amended, 15 U.S.C.A. § 81, the mark is entitled to registration by appellant. The provision relied upon by appellant reads as follows: "By similar procedure, any natural or juristic person, including nations, States, municipalities, and the like, which exercises legitimate control over the use of a collective mark, may apply for and obtain registration of such mark."

In the first place, the mark in question is not a "collective mark." In "Trademark Protection and Unfair Trading," by Derenberg, at p. 319, "collective marks" are defined as "the devices, marks or labels used to identify fraternal societies, trade associations and unions, etc." The mark here involved is not such a mark.

▮ Furthermore, so far as the record discloses, appellant does not exercise or have the right to exercise any control over the use by appellee of the mark "Whiz" applied to grit paste soap; on the contrary, for a consideration of $7,000 it divested itself of any control over the mark as applied to such soap.

In conclusion, we think it proper to observe that, for the purposes of these appeals, we do not find it necessary to de-

termine whether, under the terms of said contract of October 2, 1912, appellee possesses any trade-mark rights capable of protection under the trade-mark registration laws. We only hold that by virtue of said contract appellant is estopped from claiming that it is the owner of the mark "Whiz" applied to soap or to other goods possessing the same descriptive properties.

For the reasons stated, the decision of the commissioner in each of the appeals, Nos. 4484, 4485, and 4486, is affirmed.

Affirmed.