**KIMBERLY–CLARK CORPORATION, Appellant,**

v.

**FORT HOWARD PAPER COMPANY, Appellee.**

**Appeal No. 85–902.**

United States Court of Appeals, Federal Circuit.

Sept. 6, 1985.

Dean A. Olds, Willian, Brinks, Olds, Hofer, Gilson & Lione, Ltd., Chicago, Ill., ar-

gued for appellant. With him on brief was Thomas M. O'Malley, Chicago, Ill. ·

Boyd A. Tracy, Kimberly-Clark Corp., Neenah, Wis., of counsel.

George P. McAndrews, Allegretti, Newitt, Witcoff & McAndrews, Ltd., Chicago, Ill., argued for appellee. With him on brief were L. Michael Jarvis, Allegretti, Newitt, Witcoff & McAndrews, Ltd., Chicago, Ill., of counsel, and Joseph D. Kaufman, Fort Howard Paper Co., Green Bay, Wis., of counsel.

Before FRIEDMAN, DAVIS and NIES, Circuit Judges.

NIES, Circuit Judge.

This appeal is from the decision of the Trademark Trial and Appeal Board (TTAB) of the Patent and Trademark Office (PTO) sustaining an opposition by Fort Howard Paper Company to registration by Kimberly-Clark Corporation of the mark KIMTEX for "non-woven fabric articles, namely, wiping cloths."[1] The board held, *inter alia,* that a settlement agreement entered into in 1924 between the applicant's predecessor and the opposer "precluded" registration of the subject mark. Since we conclude that a registration for non-woven fabric wiping cloths is not barred by the agreement, we reverse.

## I.

Kimberly-Clark seeks to register the mark KIMTEX for "non-woven fabric articles, namely, wiping cloths" in International Class 24 (U.S. Class 42). The facts relating to the prosecution of that application and the course of the *inter partes* proceedings leading to this appeal are detailed in the board's opinion. Familiarity with these facts will be assumed.[2] It suffices here to note that Fort Howard asserted three grounds for opposing the application:

(1) a 1924 settlement agreement which, opposer asserted, barred Kimberly-Clark from securing the registration sought;

(2) likelihood of confusion between KIMTEX for wiping cloths and the Fort Howard mark KRAFTEX for paper towels; and

(3) likelihood of confusion between KIMTEX for wiping cloths and a "family" of ... TEX marks, e.g., KRAFTEX, VEL-TEX, SPRUTEX, MILTEX and others of Fort Howard for a line of paper products.

The board held that Fort Howard failed to establish a family of ... TEX marks; that numerous uses of TEX marks for paper products and/or non-woven wipers by third parties had been proved; and that Fort Howard had failed to establish likelihood of confusion between the KIMTEX mark and any of its marks, either individually or as a group. Fort Howard did not appeal and does not now challenge the board's decision on the issue of likelihood of confusion.

The 1924 agreement between Fort Howard and Cellucotton Products Company, a predecessor of Kimberly-Clark, resolved an opposition by Cellucotton to Fort Howard's application to register KRAFTEX for toilet paper, paper napkins, paper towels, and paper tablecloths based on Cellucotton's prior use and registration of the mark KOTEX for sanitary napkins. Cellucotton agreed to dismiss the opposition in consideration of Fort Howard's promise that, should it ever engage "in the business of making and (or) selling sanitary napkins, it will not use in any way, in connection with the sale of said sanitary napkins, the name or mark 'Kraftex', or any other name or mark terminating in the suffix 'tex' or the equivalent thereof."

Cellucotton reciprocally agreed that, should it ever engage "in the business of making and/or selling of toilet paper, paper napkins, paper towels, or paper tablecloths, it will not use in any way, in connection

1. Application Serial No. 42,194, filed January 20, 1975. Opposition No. 58,817 was filed October 22, 1976.

2. The TTAB decision dated February 29, 1984 is reported at 221 USPQ 732 (1984). A decision on reconsideration dated November 16, 1984 is unreported.

with the sale of said toilet paper, paper napkins, paper towels, or paper tablecloths, any word terminating in the suffix 'tex' or the equivalent thereof."

The decision by the board sustaining the subject opposition rests solely on its determination that the rights and obligations flowing from the above agreement preclude Kimberly-Clark from registering KIMTEX for non-woven fabric wiping cloths. It is this part of the board's decision that is the subject of this appeal by Kimberly-Clark.

## II.

The issues raised by Kimberly-Clark are the following:

A. Whether the Trademark Trial and Appeal Board erred in permitting a 1924 agreement between Fort Howard and Kimberly-Clark's predecessor to solely dictate its decision to deny registration of Kimberly-Clark's KIMTEX mark, despite its express finding that there is no likelihood of confusion between the KIMTEX mark and any of Fort Howard's marks, either individually or as a group; and

B. Whether the TTAB erred in its interpretation and enforcement of the 1924 agreement.

## III.

Kimberly-Clark asserts that the board erred in treating the 1924 settlement agreement as dispositive of the case, despite the board's conclusion that there was no likelihood of confusion between Kimberly-Clark's use of KIMTEX for wiping cloths and Fort Howard's use of KRAFTEX and other ... TEX marks for paper towels and other paper products.

Kimberly-Clark argues that the board has statutory jurisdiction only over the question of likelihood of confusion and that an agreement between the parties is but one factor to be considered in resolving that question. It argues that the law is clear that a private agreement, consent, or other arrangement between the parties cannot "dictate the decision which the Pat-ent and Trademark Office must make on registration," citing *Chromalloy American Corp. v. Kenneth Gordon (New Orleans) Ltd.*, 736 F.2d 694, 699, 222 USPQ 187, 191 n. 4 (Fed.Cir.1984); *In re E.I. DuPont de Nemours & Co.*, 476 F.2d 1357, 1362, 177 USPQ 563, 568 (CCPA 1973); and *In re Continental Baking Co.*, 390 F.2d 747, 749, 156 USPQ 514, 516 (CCPA 1968). Thus, per Kimberly-Clark, the board may decide other issues, which it characterizes as "collateral," only as necessary in the course of its exercise of its statutory jurisdiction. In other words, according to Kimberly-Clark, an agreement between the parties cannot provide an independent basis for *denying* registration.

■ Kimberly-Clark's position is clearly untenable and its reliance on the *Chromalloy* decision for support is misplaced. Indeed, *Chromalloy* supports the board's position that an agreement between parties may *bar* registration, wholly apart from the issue of likelihood of confusion.

In *Chromalloy* the board had dismissed an opposition on two grounds:

(1) under principles of claim preclusion (*res judicata*) arising from a consent judgment in prior litigation between the parties; and

(2) by reason of a consent by the opposer to registration by the applicant purportedly given by the terms of the decree entered in that litigation.

Kimberly-Clark points to a statement by this court, in reversing the board's decision in *Chromalloy,* that it was "legal error" for the board to have "treated the consent judgment as dispositive of the case." That statement, per Kimberly-Clark, constitutes a holding that no consent decree or other agreement between the parties can be dispositive of contested proceedings before the board and that the board's jurisdiction is limited to the issue of likelihood of confusion.

Kimberly-Clark's interpretation of *Chromalloy* is unwarranted. The statement extracted by Kimberly-Clark from that opinion, in context, related to the *res judicata*

effect of a consent decree as a *judgment,* not to its effect on registrability as an *agreement* between the parties. Moreover, Kimberly-Clark's suggested interpretation of the *Chromalloy* case would represent a major departure from the precedent of this court, as will be discussed. Counsel is apparently unaware that a panel of this court is bound by prior precedential decisions unless and until overturned *in banc.* Thus, statements in opinions of this court must be read harmoniously with prior precedent, not in isolation. Had counsel done so in this case, the first issue would have been discarded, and substantial portions of both briefs, as well as the time devoted to the issue at oral argument, would have been unnecessary.

With respect to the argument that the board has no jurisdiction over issues other than likelihood of confusion in an opposition, the precedent of this court is unequivocally that the issues in an opposition are not so restricted. As stated in *California Packing Corp. v. Sun-Maid Raisin Growers of California,* 64 F.2d 370, 372–73, 17 USPQ 257–58 (CCPA 1933), *cert. denied,* 298 U.S. 668, 56 S.Ct. 833, 80 L.Ed. 1391 (1935):

> We will first consider the matter relating to said contract of March 10, 1917, for if the Commissioner was in error in his holding that said contract was not material to the question of registration of appellee's marks, and if we should also find that said contract bars appellee from asserting ownership of said marks used upon goods named in its applications, then the decision of the Commissioner must be reversed and the oppositions sustained, *rendering it unnecessary for us to consider the question of confusing similarity of the marks* of the respective parties. [Emphasis added.]

That the board replaced the Commissioner as the adjudicator of oppositions did not restrict the scope of the issues in such proceedings.

Kimberly-Clark also confuses the effect of an agreement consenting to another's use and/or registration with the effect of an agreement *barring* another's use and/or registration. This difference is also clearly articulated in the *California Packing* decision:

> The Commissioner erred in holding that the legal effect of said contract of March 10, 1917, could not be considered by him, and the case of *Skookum Packers' Association v. Pacific Northwest Canning Co.,* 45 F.(2d) 912, 18 C.C.P.A. 792, does not support his ruling. In that case we held that "parties can not, by their conduct or by any agreement, confer upon the Commissioner of Patents the power to do that which the law forbids." No such question is involved in the case at bar. Here the question is whether the terms of a contract prevent appellee from securing a registration which the statute might otherwise permit. In other words, in the Skookum Case we held that parties could not by their contract confer any right of registration which the law forbids, while in the case at bar the question is whether appellee is estopped from securing the registrations which it seeks.

64 F.2d at 373, 17 USPQ at 258.

In line with this precedent, the *Chromalloy* decision, which involved a consent to registration, not preclusion of registration, merely reiterated that an agreement by the parties cannot *confer* a right to registration of a mark which the statute prohibits. In any event, since no consent was given in *Chromalloy,* the opposer was entitled to pursue the issue of likelihood of confusion on remand.

■ In the instant case, the issue is whether a mark otherwise entitled to registration is, nevertheless, *barred* therefrom by an agreement between the parties. We hold that this issue is within the jurisdiction of the board and may constitute an independent basis for sustaining the opposition apart from the issue of likelihood of confusion.

## IV.

Fort Howard makes three arguments related to preclusion of registration of the KIMTEX mark based on the 1924 agreement. First, it is asserted that, because of the agreement, Kimberly-Clark's use is "in bad faith." This argument begs the question. If Kimberly-Clark is not precluded by the agreement, there is no evidence of bad faith. Thus, the cases cited by Fort Howard involving, for example, token use to preempt a mark knowing that another intended to use it (*Stern Electronics, Inc. v. Kaufman*, 669 F.2d 852, 213 USPQ 443 (2d Cir.1982)) are irrelevant to the question here.

Fort Howard argues alternatively either that Kimberly-Clark is equitably estopped to claim rights or that Kimberly-Clark has abandoned rights. Under either theory, Kimberly-Clark would not be the "owner" of the mark KIMTEX for wiping cloths, at least vis-a-vis Fort Howard. While Fort Howard's theories of estoppel are correct, no precedent provides particular guidance to the application of those principles to the specific facts of the case at hand, to which we now turn.

The parties are in agreement that the 1924 settlement limits Kimberly-Clark's use of a ... TEX mark only with respect to specific goods, namely, toilet paper, paper napkins, paper towels, and paper tablecloths. The dispute between them focuses on (1) whether Kimberly-Clark's goods are paper towels; and (2) if not paper towels, whether Kimberly-Clark is, nevertheless, barred from registration because wiping cloths are so closely related to paper towels.

The resolution of these issues is complicated by the fact that Kimberly-Clark initially put out a wiper which is much more like a paper towel in composition and texture than its current product, and initially designated International Class 16 (U.S. Class 37) covering paper goods as the appropriate class for registration. Subsequently, Kimberly-Clark amended its application to International Class 24 (U.S. Class 42) for fabric articles.[3] The board found that because the first Kimberly-Clark product was composed in part of cellulose, it may be "classified as a paper towel" and, therefore, falls "within the proscription of the contract that prohibits applicant from using a mark terminating in the suffix 'tex' on paper towels."[4] The board then found that the current product was barred because that product "is so closely related to heavy duty 'paper' wipers in appearance, function and in channels of distribution that applicant may not seek registration of a mark terminating in the suffix 'tex' for such a closely related product. *R.M. Hollingshead Corp. v. The Davies-Young Soap Co.*, [121 F.2d 500, 50 USPQ 71 (CCPA 1941) ]". 221 USPQ at 736 (footnote omitted).

We do not agree that the *Hollingshead* case established a general rule of law that a contractual bar to use of a mark for particular goods embraces "related" goods. In the *Hollingshead* case, the opposer was using the mark WHIZ for grit paste soap which "by the very terms of the trade mark statute" precluded the applicant "from registering the same mark upon goods having the same descriptive properties as grit paste soap." 121 F.2d at 503, 50 USPQ at 75. The applicant in *Hollingshead* was estopped from averring that it had an exclusive right to use the mark WHIZ for soap or other cleaning preparations because the opposer, with the applicant's agreement, had rights in WHIZ for grit paste soap.

Unlike *Hollingshead*, estoppel cannot be based here on an oath in the application by Kimberly-Clark that falsely embraces the mark and goods of another. We do not see that this ground for the holding in *Hollingshead* has any broader scope than the

---

3. Classification is not determinative of rights, but it is here of some evidentiary value with respect to what Kimberly-Clark considered the nature of the product to be.

4. At the same time the board accepted that use of KIMTEX for the first product (absent estoppel) provided a basis for seeking registration in the fabric class (Int. Class 24).

facts therein support.[5] Fort Howard has established here no right to use KIMTEX for paper towels, nor any likelihood of confusion with any of its marks. In the absence of such facts, the *Hollingshead* analysis with respect to "related" goods has no applicability.

While in some instances it may be appropriate to construe a contractual bar to encompass "related" goods in the sense that that term is used in trademark law, such a construction would arise from the intent of the parties. In the instant case, the language of the contract is too restrictive with respect to the types of prohibited goods to find a mutual intent that the bar was to extend broadly to "related" goods.

On the other hand, Fort Howard's argument that the contractual bar should be construed to encompass types of goods unknown at the time of the agreement which are paper towel substitutes, i.e., "non-paper paper towels," is not without merit. A narrower construction could deprive the agreement of its substance. However, even if the agreement is interpreted to include "non-paper paper towels," the board did not hold that the product on which Kimberly-Clark has used KIMTEX since 1976 fits into that category. The current product was barred only because the board held that it was "related" to paper towels. Since the contractual bar does not extend to "related" goods, the current KIMTEX goods are not contractually barred from registration.

In this connection, Fort Howard urges us to modify the board's decision and hold that the current product is also a "non-paper paper towel." However, our review of the evidence with respect to the current product does not lead us to conclude that it is a new type of "paper towel" within any meaning which might reasonably be given to that term in the contract.[6]

The question remains whether Fort Howard is entitled to have the opposition sustained because of the nature of the initial KIMTEX product. Per Fort Howard, the board found this type of wiper to be a "paper towel" in fact, and that finding is not clearly erroneous. Fort Howard does not challenge that the initial product also is a non-woven fabric wiping cloth, which would support an application in the fabrics class, absent estoppel.

Kimberly-Clark, on the other hand, argues that the board held the initial wiper to fall under the contractual bar as a matter of contract interpretation, not as a factual finding, and urges us to reverse the board as a matter of law.

We see no necessity in these proceedings to resolve the conflict between the parties with respect to the nature of the initial product, either as a matter of fact or law. The initial KIMTEX product was marketed only during part of the years 1975–1976. It was replaced in August 1976 by the current product, which is neither a paper towel in fact, nor under any possible meaning of that term in the contract. If use of the mark KIMTEX for the initial goods was a breach of contract, the breach was cured before the opposition was instituted. In addition, Kimberly-Clark has represented to this court that it no longer makes that original type of wiper and has no intention of resuming its manufacture or sale. Having made those representations to the court in aid of its defense, we consider Kimberly-Clark to be bound by them.

The registration Kimberly-Clark seeks will afford Kimberly-Clark no right to use KIMTEX on any product barred by the contract, now or in the future. Further, whether its *initial* product is or is not barred by the contract, Kimberly-Clark is now barred from using KIMTEX for such goods. Under these circumstances, we see

---

**5.** This basis for the decision was one of three sustained by the court. The first ground was the existence of an unchallenged registration of the opposer for WHIZ for soap, which precluded the registration sought. As the court stated, "We might content ourselves with affirming the

decisions appealed from upon this ground alone." 121 F.2d at 503, 50 USPQ at 74.

**6.** The evidence shows that the KIMTEX II, the current product, is 100% polypropylene and promoted as a substitute for shop rags.

no genuine dispute at this time affecting the substantive rights of the parties arising from the nature of the original KIMTEX product. The issue of the first product being contractually barred has been effectively mooted in these proceedings.[7] Should Kimberly-Clark again use KIMTEX on that type of product, nothing in this opinion should be construed to prevent Fort Howard from seeking to enjoin Kimberly-Clark's use of KIMTEX with respect to such goods in an appropriate court.

## Conclusion

The decision of the Trademark Trial and Appeal Board, sustaining the opposition by reason of a 1924 agreement between the parties, is *reversed*.

REVERSED.

---

**7.** The only possible remaining question, if the original product is a paper towel, is whether the PTO properly allowed the amendment to the description of goods which necessarily encompassed this use. The board accepted that the amendment was proper. No rights of the parties turn on this question and, indeed, Fort Howard does not challenge the propriety of the amendment. Thus, the question of whether Kimberly-Clark is entitled to the 1975 filing date for the application as amended is also moot.