SCHAPER MANUFACTURING CO. and A. Eddy Goldfarb d/b/a A. Eddy Goldfarb & Associates, Appellants,

v.

U.S. INTERNATIONAL TRADE COMMISSION, Soma Traders, Ltd., et al., Appellees.

Appeal No. 83–713.

United States Court of Appeals, Federal Circuit.

Sept. 22, 1983.

Tom M. Schaumberg, Washington, D.C., argued for appellants. Cecilia H. Gonzalez, Washington, D.C., Joseph Golant, Robert M. Ashen and Thomas D. Phillips, Los Angeles, Cal., were on the brief, for appellants.

Wayne Herrington, Washington, D.C., argued for appellee Intern. Trade Com'n.

Lynn J. Alstadt, Pittsburgh, Pa., argued for appellee Soma Traders, Ltd. Paul A. Beck, Los Angeles, Cal., Lauren R. Howard, Jeffrey W. King and Michael A. Kershaw,

---

Washington, D.C., were on the brief, for appellee.

Before RICH, DAVIS and KASHIWA, Circuit Judges.

DAVIS, Circuit Judge.

Schaper Manufacturing Company (Schaper) and A. Eddy Goldfarb, d/b/a A. Eddy Goldfarb and Associates (Goldfarb), seek review of the October 15, 1982 order of The United States International Trade Commission (ITC or Commission) which terminated the investigation in *In the Matter of Certain Miniature, Battery-Operated, All-Terrain, Wheeled Vehicles,* Investigation No. 337–TA–122, USITC Pub. No. 1300, on the ground that there is no domestic "industry" affected by the alleged unfair trade practices. We affirm.

## I

The investigation was initiated by appellants' filing of a complaint with the Commission on April 23, 1982, under Section 337 of the Tariff Act of 1930 (19 U.S.C. § 1337).[1] The complaint alleged unfair methods of competition and unfair acts in the importation into the United States, or sale here, of certain miniature, battery-operated, all-terrain wheeled vehicles (toy ve-

hicles or Stomper vehicles), involving (1) infringement of U.S. Letters Patent 4,306,-375 (the '375 patent) and (2) false designation of source by reason of the copying of appellants' vehicles. The complaint further alleged that the effect or tendency of the unfair methods of competition and unfair acts is to destroy or substantially injure an industry, efficiently and economically operated, in the United States.

The Commission published a notice of investigation on May 19, 1982. 47 Fed.Reg. 21638, *amended* 47 Fed.Reg. 34864 (Aug. 11, 1982).[2] On October 15, 1982, the Commission issued its final determination that a section 337 violation did not exist, and filed an opinion supporting that determination four days later. The Commission concluded that "there is no violation of section 337 in this investigation because, given the particular facts of this case, complainants do not constitute 'an industry . . . in the United States' within the meaning of that phrase as used in section 337." [3]

The sole issue before us is whether the Commission properly so concluded, thus terminating the investigation.

## II

Schaper is located in Minneapolis, Minnesota, and is engaged in the developing,

---

1. 19 U.S.C. § 1337 (1976) provides in pertinent part:
   "Unfair practices in import trade
   (a) Unfair methods of competition declared unlawful
   Unfair methods of competition and unfair acts in the importation of articles into the United States, or in their sale by the owner, importer, consignee, or agent of either, the effect or tendency of which is to destroy or substantially injure an industry, efficiently and economically operated, in the United States, or to prevent the establishment of such an industry, or to restrain or monopolize trade and commerce in the United States, are declared unlawful, and when found by the Commission to exist shall be dealt with, in addition to any other provisions of law, as provided in this section."
   Section 337 was originally enacted as section 316 of the Tariff Act of 1922, and was reenacted in revised form as section 337 of the Tariff Act of 1930. It was then reenacted in revised form in the Trade Act of 1974, and substantially amended by the Trade Agree-

ments Act of 1979 and the Customs Court Act of 1980. Throughout these revisions and reenactments, section 337(a), *supra,* has remained essentially unchanged.

2. Thirteen parties were initially named as respondents in the notice, including Soma Traders, Ltd., and the other non-government appellees in the current case. The Commission subsequently terminated four respondents, three on the basis of a settlement agreement.

3. The Commission initially referred the investigation to an administrative law judge, under its rules then in effect, and designated an attorney from its Unfair Import Investigations Division to act as investigative attorney. The ALJ's recommended determination was in appellants' favor—that a section 337 violation exists—after which the Commission held a hearing and issued its final determination. A petition for rehearing of the final determination, filed by the Commission investigative attorney, was denied.

manufacture and marketing of toy products. Goldfarb, situated in Northridge, California, invents toys and games which are then licensed to toy manufacturers. The toy vehicles here, marketed by Schaper under the trade name Stomper,[4] were invented in 1979 by Goldfarb. The '375 patent was obtained for these toy vehicles on December 22, 1981. Schaper was granted an exclusive license in 1979 to manufacture, use and sell the Stomper toy vehicles and accessories [5] (also created and designed by Goldfarb). Goldfarb has continued to develop successive lines of Stomper vehicles and accessories.

Schaper arranged for the manufacture of the Stomper vehicles by Kader Industrial Company (Kader), an unrelated firm in Hong Kong, from which Schaper procures the toys. After Schaper receives a new design from Goldfarb, it prepares specifications for the toy and engineering drawings for the tooling to be used in the manufacture of that design. These specifications and drawings are forwarded to Kader, which manufactures the tooling and the vehicles according to Schaper's specifications. Schaper pays for, and retains ownership of, the tooling made and used by Kader in its production of the vehicles. Schaper maintains regular communication with Kader regarding the manufacturing of the toy vehicles. After Kader conducts a quality control program of the toys in Hong Kong, designed by Schaper, they are shipped to the United States on procurement by Schaper. Most are shipped to Schaper already packaged and essentially ready for sale in blister packs; the remaining are shipped in cellophane poly bags and become component parts of Stomper play sets along with accessories. On receipt from Kader, Schaper conducts more quality control testing.

Appellee Soma Traders, Ltd. (Soma) also imports toy vehicles from Hong Kong—allegedly copies of the Stomper toy vehicles— sold under the names "Super Climbers" and "Military Super Climber." The Soma toy vehicles are sold by toy wholesalers, including appellees Milton Myer Co., Inc., ESCO Imports, Pensick and Gordon, and Novelty Distributors Inc. There are no accessories sold by these appellees or specifically for the Soma vehicles.

## III

Though the overall problem is whether appellants' domestic business activities constitute an "industry ... in the United States," giving appellants the protections of section 337, the initial inquiry is what parts of these activities are to be considered, in this investigation, as included in an "industry ... in the United States." We hold that the Commission properly disposed of that preliminary question.

First, the Commission correctly stated that the definition of "United States" is geographical and not based on citizenship. Section 337(j) defines "United States" as "the customs territory of the United States as defined in general headnote 2 of the Tariff Schedules of the United States (TSUS)." 19 U.S.C. § 1337(j). General headnote 2 of TSUS defines United States Customs territory as "the States, the District of Columbia, and Puerto Rico." In order to meet the threshold requirement of being an "industry ... in the United States," the "industry" must be geographically located in the United States.

---

4. The Stomper vehicle is a four-wheel drive, battery-operated, all-terrain toy vehicle. It measures approximately four inches in length and two inches in height and width. The chassis houses the motor, gears, battery, and a light bulb (for simulated headlights). Four black, oversized tires are attached to the chassis by two axles. The chassis is the same on all Stomper models. Different models are created by attachment to the chassis of various plastic bodies designed to resemble real-life vehicles. The continuous battery-powered operation and four-wheel drive enable the vehicle to climb steep grades, clamber over objects, and pull loads.

5. The accessories, such as toy logs, mountains, and racetracks, were designed to "enhance the play value" of the vehicles by demonstrating their climbing and pulling abilities. Some of the accessories are the subject of pending patent applications.

Second, we agree with the Commission that that portion of the appellants' business activities relating to production of the Stomper accessories, all of which occurs in the United States, cannot be considered part of any domestic Stomper toy vehicle industry for the purpose of meeting the "industry . . . in the United States" requirement. In cases under § 337 involving United States article patents, the relevant domestic "industry" extends only to articles which come within the claims of the patent relied on. *See Certain Molded-In Sandwich Panel Inserts and Methods for Their Installation,* USITC Publication 1246 (May 1982); *Certain Headboxes and Papermaking Machine Forming Sections for the Continuous Production of Paper, and Components Thereof,* 213 USPQ 291 (ITC 1981), relief modified 217 USPQ 179 (ITC 1981); *see also* 19 C.F.R. § 210.20(a).8(H) (1982). This is a well-settled rule of longstanding. The House of Representatives committee report on section 337, when it was reconfirmed in 1974, supports this definition:

> In cases involving the claims of U.S. patents, the patent must be exploited by production in the United States, and the industry in the United States generally consists of the domestic operations of the patent owner, his assignees and licensees devoted to such exploitation of the patent.

H.Rep. No. 93–571, 93rd Cong. 1st Sess. 78 (1973).

Appellants' complaint alleged infringement of the '375 patent, which covers only the Stomper toy vehicles. The fact that the existence of the accessories derives from the toy vehicles does not make their domestic production by Schaper—regardless of the extent of Schaper's activities in manufacturing and producing them—a part of a toy vehicles industry in this action under section 337.[6] The accessories are not a nec-

essary part of the vehicles, nor are they integral to them. Most of the appellants' vehicles are sold without the accessories; the latter do not come within the claims of the '375 patent; nor do they have the claimed product configuration of the Stomper toy vehicle. *See* footnote 8, *infra.* The Commission could rightly conclude from these facts that "the Stomper accessories cannot be part of any domestic industry in this investigation."

Third, we also agree with the Commission that appellant Goldfarb's activities cannot be considered part of any domestic "industry" relevant to this case. His activity concerning the Stomper toy vehicles is the design and licensing of the toy vehicles and accessories, and the collection of royalties; Goldfarb is not involved in the manufacture or selling of the vehicles.

The record shows that Goldfarb's activities with respect to the patented toy vehicles amount to nothing more than that of any inventor. There is nothing in the statute or its legislative history to indicate that such activities, which do not involve either manufacture or production or servicing of the patented item, are meant to be protected by section 337. As noted by the Commission in *Certain Ultra-Microtome Freezing Attachments,* 195 USPQ 653, 656 (ITC 1976), "[t]he wording of the statute itself adds to the conclusion that the statute protects only parties producing under the patent. To find a section 337 violation, the statute requires that the industry be 'efficiently and economically operated.' 'If the statute were addressed to the patent rights per se of a patentee, there would be no need for the test of efficiency and economy of operation.'" [Footnote omitted.] As we have pointed out, this has been the consistent, long-established Commission rule, and there is no reason to disturb it.[7]

---

6. Indeed, it is hard to imagine that Schaper's production of the accessories could be injured by the appellees' toy vehicles. Appellees produce and sell no comparable accessories, and all of the toy vehicles at issue apparently are compatible with Schaper's Stomper accessories. To whatever extent the market is expanded by the challenged toy vehicles, Schaper's

accessory business seems to be helped rather than hurt.

7. Appellants rest on Goldfarb's general business of designing and inventing many kinds of toys (he has some 50–60 projects a year and has created over 1000 toys) for many firms, but most of this activity is, of course, unrelated in

## IV

Having joined with the Commission that both the accessories and Goldfarb's activities should be eliminated from consideration, we focus on Schaper's domestic activities related to the Stomper toy vehicles. Section 337 does not expressly define an "industry ... in the United States" for the purpose of determining whether a domestic industry has been injured. Both the legislative history of section 337 and past Commission decisions on those section 337 investigations that have been based on claims of patent infringement indicate that, in order to constitute an "industry ... in the United States," the patent must be exploited by production in the United States. See Part III, supra. As quoted above, the House report accompanying the Trade Act of 1974 states that "the patent must be exploited by production in the United States, and the industry in the United States generally consists of the domestic operations of the patent owner, his assignees and licensees devoted to such exploitation of the patent." H.Rep. No. 93–571, 93d Cong. 1st Sess. 78 (1973).[8] The Commission in Certain Ultra-Microtome Freezing Attachments, supra, 195 USPQ at 656, likewise said that "[p]ast Commission decisions, from Bakelite [Frischer & Co. v. Bakelite Corp., 39 F.2d 247 (CCPA 1930)] through Electronic Pianos [USITC Pub. 721 (March 1975)], have defined 'industry' in section 337 investigations as the domestic manufacture or production of the patented product by the patentee or his licensee." [9]

On this view, the nature and the extent of Schaper's domestic activities (in relation to the total production process of the Stomper toy vehicles) are insufficient to constitute an "industry ... in the United States." The entire manufacturing of the toy vehicles occurs in Hong Kong, as does most of the packaging and quality control. Schaper purchases from Kader the toy vehicles, the great bulk of which are already packaged for sale in blister packs, and imports them into the United States. Those that are not already in blister packs are imported in plastic bags, which are then placed in some of the boxes containing accessories. Schaper's inspection activities upon receipt in this country appear to involve ordinary sampling techniques. They are nothing like those in Certain Cube Puzzles, USITC Pub. 1334 (Jan. 1983), in which Ideal Toy's quality control, repair and packaging of imported cube puzzles was determined to constitute an "industry ... in the United States." Unlike Ideal's large inspection and packaging operation in which half of the puzzle's value was added by Ideal's United States activities, Schaper has not shown its United States inspection activities to be substantially different from the random sampling and testing that a

---

any way to the Stomper toy vehicle. Insofar as the claim is that Goldfarb was engaged in general "research and development" for the toy industry, the answers are that (a) in an investigation based on alleged infringement of a particular United States patent, the patentee's other activities are irrelevant, (b) the Commission has never considered "research and development" activities, standing alone, to constitute an "industry" under § 337, and (c) Schaper's activities together with Goldfarb's very different activities do not together constitute an "industry." It is also worth noting that Goldfarb's continuing design activities with respect to the Stomper vehicles relate to the tops which are not covered by the '375 patent—and they do not substantially involve Schaper's claims as to product configuration (which flows from the design of the chassis, not the tops).

8. Although it was the Senate version of the revised section 337 that was enacted, neither the Senate nor House version amended section 337(a)'s "industry" requirement. This portion of the House Report was a recitation of past Commission practices. The Senate version does not recite this practice, but there is no reason to think that body rejected the House report's statement.

9. See also Certain Plug-In Blade Fuses, USITC Pub. 1337 (Jan. 1983); Certain Molded-In Sandwich Panels Inserts and Methods for Their Installation, USITC Pub. 1246 (May 1982); Certain Headboxes and Papermaking Machine Forming Sections for the Continuous Production of Paper, and Components Therefor, 213 USPQ 291 (ITC 1981); Certain Surveying Devices, USITC Pub. 1085 (July 1980); Certain Multicellular Plastic Film, USITC Pub. 987 (June 1979); Certain Luggage Products, USITC Pub. 932 (Nov. 1978); Reclosable Plastic Bags, USITC Pub. 801 (Jan. 1977).

normal importer would perform upon receipt (and Schaper does no repairs). Also, Schaper's very large expenditures for advertising and promotion cannot be considered part of the production process. Were we to hold otherwise, few importers would fail the test of constituting a domestic industry. In addition, Schaper's monitoring [10] of Kader's manufacturing cannot be considered part of a domestic industry; it occurs in Hong Kong.

Nor are Schaper's activities comparable to the servicing and installation activities accepted in *Certain Airtight Cast Iron Stoves,* USITC Pub. 1126 (Jan. 1981) and *Certain Airless Paint Spray Pumps and Components Thereof,* USITC Pub. 1199 (Nov. 1981), in which substantial domestic repair and installation activities necessarily associated with imported stoves (in *Stoves*), and frequent domestic product servicing under warranties as well as some domestic production (in *Spray Pumps*), were found by the Commission sufficient to warrant determinations that the "industry" requirement was met. Although we agree that in proper cases "industry" may encompass more than the manufacturing of the patented item, we also believe that the Commission did not err in deciding that Schaper's activities in the United States are too minimal to be considered an "industry" under section 337. There is simply not enough significant value added domestically to the toy vehicles by Schaper's activities in this country (including design, inspection and packaging). The result is that the Commission's determination, which is consistent with its other holdings, is not erroneous as a legal matter or unsupported by substantial evidence, nor arbitrary or capricious (to the

extent the question is within the agency's discretion).

We do not have to deal in this case, more precisely, with the limits of section 337's use of "industry ... in the United States." [11] The Commission has not adopted appellant's proposed general definition that a "significant employment of American land, labor and capital for the creation of value" constitutes such an "industry," and the words, purposes, and history of section 337 do not compel that reading if it is meant to downplay the role of production and servicing in this country. As the statute now stands, Congress did not mean to protect American importers (like Schaper) who cause the imported item to be produced for them abroad and engage in relatively small nonpromotional and non-financing activities in this country—*i.e.,* they engage in design and a small amount of inspection and packaging in this country.[12] If, as appellants suggest, present-day "economic realities" call for a broader definition to protect American interests (apparently including many of today's importers) it is for Congress, not the courts or the Commission, to legislate that policy.[13]

The Commission's order is

*Affirmed.*

---

10. Not shown to be substantially different from that of an ordinary importer ordering and purchasing foreign goods to be manufactured abroad for importation into the United States.

11. Nor do we have to decide the full nature and extent of servicing activities which may be sufficient to meet section 337's requirement. To determine the present case, it is enough that Schaper's activities can clearly be considered too small in this regard.

12. In this case, the bulk of the land, labor and capital used for the creation of the value of the toy vehicles was utilized in Hong Kong, not the United States.

13. We note, superfluously, that our recent decision in *Bally/Midway Mfg. Co. v. U.S. International Trade Commissioner,* 714 F.2d 1117 (1983), has no bearing on the present case.