CORNING GLASS WORKS, Appellant,

v.

UNITED STATES INTERNATIONAL TRADE COMMISSION, Appellee,

Sumitomo Electric Industries, Ltd., Sumitomo Electric U.S.A., Inc., Intervenors.

Appeal No. 85–2632.

United States Court of Appeals, Federal Circuit.

Aug. 27, 1986.

Kenneth B. Herman and Lars I. Kulleseid, of Fish & Neave, New York City, argued for appellant. With them on brief were Daniel M. Gantt and Thomas J. Vetter. Alfred L. Michaelsen, Corning Glass Works, Corning, N.Y., of counsel.

Wayne W. Herrington, Office of Gen. Counsel, Washington, D.C., argued for appellee. With him on brief were Lyn M. Schlitt, Gen. Counsel and Michael P. Mabile, Asst. Gen. Counsel.

Italo H. Ablondi of Ablondi & Foster, P.C., Washington, D.C., and George T. Mobille of Cushman, Darby & Cushman, Washington, D.C., argued for intervenors. With them on brief were F. David Foster and Sturgis M. Sobin of Ablondi & Foster, P.C. and Robert W. Adams of Cushman, Darby & Cushman.

Before NIES, BISSELL and ARCHER, Circuit Judges.

NIES, Circuit Judge.

Corning Glass Works appeals from the International Trade Commission's determination that the importation and sale of certain optical waveguide fibers manufactured in Japan by Sumitomo Electric Industries, Ltd. (SEI) and sold in the United States by Sumitomo Electric U.S.A., Inc. (SEUSA) (collectively Sumitomo) did not violate section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337 (1982).[1] Although the subject imports were found to infringe Corning's U.S. Patent No. 3,659,-915 covering certain optical waveguide fibers and to have been made abroad using a process claimed in Corning's U.S. Patent No. 3,933,454 covering a flame hydrolysis method for making optical waveguide fibers, the Commission found no effect or tendency to substantially injure a domestic industry within the meaning of section 337 because the quantity of imports had been, and were likely to remain, *de minimis.* Corning asserts that the Commission has misinterpreted the statutory injury requirement and erred in its findings of facts on this issue. Our jurisdiction over the appeal is found in 19 U.S.C. § 1337(c) (1982) and 28 U.S.C. § 1295(a)(6) (1982). We affirm. In view of our disposition of the appeal on the issues related to the determination of no injury, resolution of the patent issues is not necessary to this decision and we do not address them. That part of the decision below is vacated.

## I.

### *Procedural Background*

The Commission instituted the investigation at issue on April 5, 1984, on the basis

---

**1.** 19 U.S.C. § 1337(a) provides:

(a) *Unfair methods of competition declared unlawful.*

Unfair methods of competition and unfair acts in the importation of articles into the United States, or in their sale by the owner, importer, consignee, or agent of either, the *effect or tendency of which is to destroy or substantially injure an industry,* efficiently and economically operated, in the United States, or to prevent the establishment of such an industry, or to restrain or monopolize trade and commerce in the United States, are declared unlawful, and when found by the Commission to exist shall be dealt with, in addition to any other provisions of law, as provided in this section. (Emphasis added.)

of a complaint by Corning. Corning alleged that Sumitomo was engaged in an unfair method of competition in the importation and sale of certain optical waveguide fibers. In particular, Corning charged Sumitomo with direct infringement of claims 1 and 2 of Corning's U.S. Patent No. 3,659,915, which claims certain optical waveguide fibers, and with unauthorized importation and sale of fibers manufactured abroad using a process claimed in claims 1, 3 and 8 of Corning's U.S. Patent No. 3,933,-454, which claims a method for making optical waveguide fibers.[2]

The Commission referred the case to an administrative law judge for an evidentiary hearing and initial determination. On January 22, 1985, the ALJ issued his initial determination. He found that both patents were not proved to be invalid, or unenforceable, and were infringed by Sumitomo. The parties stipulated that the domestic industries operating under each patent were efficiently and economically operated. However, the ALJ found no effect or tendency to destroy or substantially injure the relevant industries. In this connection, he found that the optical waveguide fiber market in the United States had been expanding, and would continue to expand, faster than the capacity of the domestic industry to meet the demand. He also found that Sumitomo's imports had had no appreciable effect on the sales or prices of domestic producers and that such imports were likely to diminish in the years ahead.

Both Corning and Sumitomo petitioned the Commission for review of various portions of the initial determination. On March 8, 1985, the Commission ordered review of the initial determination, but only with respect to the issue of whether Sumitomo's importation or sales had the *tendency* to substantially injure an industry in the United States.

On April 18, 1985, the Commission completed its review, determined that there was no violation of section 337, and termi-nated the investigation. 50 Fed.Reg. 16,-171 (1985). The Commission subsequently issued a written opinion. *In re Certain Optical Waveguide Fibers,* No. 337–TA–189 (May 20, 1985). In that opinion, the Commission affirmed the portion of the initial determination finding no tendency to substantially injure the relevant industries. The effect of the Commission's March, 1985 order and May, 1985 opinion was specifically declared to affirm the ALJ's initial determination in its entirety. 19 C.F.R. § 210.53(h).

## II.

### *The Commission Decision*

The Commission's decision holds that there are two domestic industries, corresponding to the subject matter of each of Corning's patents. The industry under the '915 patent, that is, the patent claiming optical waveguide fibers, was found to consist of Corning and its licensees, AT & T, ITT and SpecTran; the industry under the '454 patent for a process for making the fibers solely of Corning. Although licensed under the '454 process, AT & T, ITT and SpecTran do not produce their fiber by the patented process. With respect to members of either domestic industry, the Commission refused to include Northern Telecom, Inc. (NTI), which sells fiber in the United States imported from its parent Northern Telecom, Ltd. (NTL) which manufactures the fiber in Canada under a license from Corning. The Commission also excluded American Fiberoptics and Lightwave Technologies Co., alleged by Corning to be infringers of its patents, and Valtec Corporation, an alleged infringer which has become a licensee.

Optical waveguide fiber is sold in both cabled and uncabled form. Uncabled fiber is sold to firms which cable the fiber for use in telecommunications and other applications. Corning makes and sells uncabled

---

**2.** Corning later dropped its allegation with respect to claim 3 of the '454 patent. The practice of a process abroad does not constitute infringement of a U.S. patent. However, the activity is declared by 19 U.S.C. § 1337a to provide grounds for exclusion of imports made by the process. For convenience, the term "infringement" will be used herein with respect to the '454 patent as well as the '915 patent.

fiber only. AT & T sells only cabled fiber. ITT makes both uncabled and cabled fiber, but its license contains restrictions on its sale of uncabled fiber. SpecTran sells only uncabled fiber. Sumitomo sells both cabled and uncabled fiber, competing with Corning in sales of uncabled fiber.

In 1980, Sumitomo began importing and selling optical waveguide fiber in the United States. The U.S. market for optical waveguide fiber has grown with increasing rapidity since 1982 and is expected to double in size from 1985 to 1988. Detailed findings were made concerning the domestic producers' failed attempts to expand their production capacity to supply the burgeoning market. Corning itself has had to import fiber from overseas to meet its needs, as have other domestic manufacturers. Demand has outstripped supply across the industry. Corning's licensees and some of the cablers who sell Corning fiber testified that they are unaware of any business lost to Sumitomo. Sumitomo's sales efforts have been hampered by a lack of adequate product support service and marketing, and by an inability to offer quick delivery. The record indicates that its market share from imports has remained well under 1%.[3]

Sumitomo's inability to gain a significant share of the United States market was a principal reason behind Sumitomo's decision to build a facility in this country for research, development and production of optical waveguide fiber and cable. Sumitomo began construction of its United States facility, Sumitomo Electric Research Triangle (SERT), in October, 1983, with production projected to begin in late 1985. It was found that SERT is intended to serve as Sumitomo's principal source of fiber and cable for the United States market. In conjunction with the start-up of SERT, Sumitomo intends to develop a sales, marketing and field engineering staff.

The Commission determined that the record does not establish that Sumitomo's importation and sale of the accused optical waveguide fibers have "the effect or tendency to destroy or substantially injure" the domestic industries, as required for exclusion under section 337. It rejected Corning's argument that sales activities related to Sumitomo's manufacture of fibers in the United States are relevant in determining injury. Rather, the Commission limited the injury inquiry to Sumitomo's sales of imported fibers. Finally, the Commission concluded that it would be speculative to find both that Sumitomo intended to substantially increase sales of imported fiber *and* that the domestic industry would be able to meet the rapidly expanding market on the evidence of record. While a lower quantum of proof of injury or tendency to injure is permitted in a patent-based section 337 case, per the Commission, mere speculation is not permitted.

### III.

### *The Standard of Appellate Review*

Corning states the issues in this appeal in the following terms:

1. Was the Commission wrong in determining that SEI and SEUSA's importation and sale of optical waveguide fiber, held by the Commission to infringe Corning's valid patents, had no effect of substantially injuring an efficiently and economically operated United States industry?

2. Was the Commission wrong in determining that SEI and SEUSA's continued importation and sale of such optical waveguide fiber will have no tendency to injure substantially an efficiently and economically operated United States industry?

These statements of the issues misdirect the focus of the appeal. Like numerous other appellants, Corning essentially argues its case to this court as it did to the tribunal from which the appeal was taken. We are asked to decide the original issues

---

**3.** Throughout this opinion, the court has, as much as possible, avoided disclosing materials marked confidential. The court itself has, however, reviewed these materials, much of which appears to be non-confidential in nature. In any event, "well under 1%" is the court's characterization of Sumitomo's market share.

of the case as if they had not already been decided.

The appellate function is not to determine whether the findings and conclusions of the Commission were right or wrong, in the sense that the judges of this court would or would not reach the same result if they were to decide the matter in the first instance. Issues should be framed and addressed by parties to the appeal in the terms mandated by the standard of review. In this case, the standard of review is statutory. 19 U.S.C. § 1337(c) provides: "Any person adversely affected by a final determination of the Commission under subsection (d), (e), or (f) may appeal such determination to the United States Court of Appeals for the Federal Circuit for review in accordance with chapter 7 of title 5, United States Code ..."[4]

 Under the above standard of review, a reviewing court "shall decide all relevant questions of law." 5 U.S.C. § 706; *see SSIH Equipment S.A. v. United States*, 718 F.2d 365, 371–72, 218 USPQ 678, 684 (Fed.Cir.1983). Thus, this court is not bound by the Commission's interpretation of statutory provisions. However, even though an issue may be denominated one of law, the court is not free simply to substitute its view for that of the Commission. Deference must be given to an interpretation of a statute by the agency charged with its administration. *United*

States v. Riverside Bayview Homes, Inc., — U.S. ——, 106 S.Ct. 455, 461, 88 L.Ed.2d 419 (1985). With respect to the meaning of the statutory requirements that an unfair method of competition must have "the effect or tendency ... to destroy or substantially injure a domestic industry ... in the United States," it is particularly within the province and expertise of the Commission to define those phrases.[5] Our function then becomes to decide whether the Commission's definitions or standards are *reasonable* in light of the language, policies and legislative history of the statute. *Id.; NLRB v. Transportation Management Corp.*, 462 U.S. 393, 402–03, 103 S.Ct. 2469, 2474–75, 76 L.Ed.2d 667 (1983); *see Bally/Midway Manufacturing Co. v. U.S. International Trade Commission*, 714 F.2d 1117, 1121–22, 219 USPQ 97, 100 (Fed.Cir.1983) (Commission's interpretation overturned because of "anomalous results" and "bizarre effect").

In contrast, with respect to issues of fact, our scope of review is narrowly limited. We may overturn a factual finding only if it is unsupported by substantial evidence. 5 U.S.C. § 706(2)(E); *American Hospital Supply Corp. v. Travenol Laboratories, Inc.*, 745 F.2d 1, 9, 223 USPQ 577, 583 (Fed.Cir.1984); *General Motors Corp. v. U.S. International Trade Commission*, 687 F.2d 476, 479–80, 215 USPQ 484, 487–88 (CCPA 1982), *cert. denied*, 459 U.S.

---

4. 5 U.S.C. § 706 provides:

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—
(1) compel agency action unlawfully withheld or unreasonably delayed; and
(2) hold unlawful and set aside agency action, findings, and conclusions found to be—
(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
(B) contrary to constitutional right, power, privilege, or immunity;
(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
(D) without observance or procedure required by law;

(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or
(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.
In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

5. In contrast, the Commission is not charged with administration of the patent statute, 35 U.S.C. § 1 *et seq.* Thus we do not defer to its interpretation of patent law. *See, e.g., SSIH,* 718 F.2d at 374–75, 218 USPQ at 686–87; *Aktiebolaget Karlstads Mekaniska Werkstad v. U.S. International Trade Commission,* 705 F.2d 1565, 1574–77, 217 USPQ 865, 873–75 (Fed.Cir.1983).

1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983). This is the same as the stringent standard applicable to a trial court in taking a case from a jury or in review of a jury verdict on a JNOV. As stated in *Consolo v. Federal Maritime Commission*, 383 U.S. 607, 619–20, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966):

> We have defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. Labor Board*, 305 U.S. 197, 229 [59 S.Ct. 206, 216, 83 L.Ed. 126]. "[I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *Labor Board v. Colombian Enameling & Stamping Co.*, 306 U.S. 292, 300 [59 S.Ct. 501, 505, 83 L.Ed. 660]. This is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.

383 U.S. at 620, 86 S.Ct. at 1026; *see also Atlantic Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed.Cir.1984); *SSIH*, 718 F.2d at 381, 218 USPQ at 691 (additional views of Judge Nies); *Bally/Midway*, 714 F.2d at 1125, 219 USPQ at 103 (uncontradicted evidence established injury).

With these considerations in mind, we turn to Corning's arguments which, it asserts, warrant overturning the ITC's determination that Sumitomo's imports have no effect or tendency to substantially injure the domestic industries operating under Corning's patents.

### IV.

#### *Section 337 Standard of Injury*

#### A.

Corning argues that the Commission erred, as a matter of law, in interpreting the statutory injury requirement. The test for determining injury in a patent-based section 337 action, per Corning, is whether the acts of the infringer have resulted or will result in "conceivable losses of sales."

The argument made by Corning here is a familiar refrain. A similar argument was made, for example, in *Textron, Inc. v. U.S. International Trade Commission*, 753 F.2d 1019, 224 USPQ 625 (Fed.Cir.1985), where, despite a finding of infringement of a registered trademark in the importation and sale of certain goods, no exclusion order was issued because of a negative injury determination. In essence, owners of rights in, patents, trademarks and copyrights have argued, as Corning does, that infringement of such rights inevitably has the effect or tendency to substantially injure its business by reason of loss of sales or lower profits since its rights are exclusive, and that no further inquiry into the statutory requirement for injury is necessary or appropriate.

In affirming the Commission's interpretation that satisfaction of the statutory injury requirement did not automatically follow from proof of infringement of rights in intellectual property, this court held in *Textron:*

> Contrary to Textron's assertion, section 337 does not function merely as the international extension of our patent, trademark and copyright laws. *See In-the-Ear Hearing Aids,* Tariff Commission Pub. No. 182 at 28 (July 1966). Instead, section 337 has consistently been interpreted to contain a distinct injury requirement of independent proof. *Id.* Congress may well have included this separate requirement in the original 1930 version of section 337 to insure that the extreme and internationally provocative remedy contemplated therein—exclusion of imports from particular countries—would be implemented only when this is compelled by strong economic reasons. *See, e.g.,* S.Rep. No. 93–1298, 93rd Cong., 2d Sess. 199 (1974); *reprinted in* 1974 *U.S.Code Cong. & Ad.News* 7186, 7331. Although the contemplated range of remedies was expanded by the Trade Act of 1974 to include "softer" sanctions such as cease-and-desist orders, Congress has never altered the statute's injury requirement. In fact, Congress expressly rejected a Nixon Administration attempt to

eliminate the injury requirement in its proposed Trade Reform Act of 1973. *See* H. Kaye, *et al., International Trade Practice* § 6.05 n. 1 (1984).

753 F.2d at 1028–29, 224 USPQ at 631–32; *accord Warner Brothers, Inc. v. U.S. International Trade Commission*, 787 F.2d 562, 564, 229 USPQ 126, 127 (Fed.Cir.1986) (no injury found notwithstanding copyright infringement).

■■■ Because section 337 does not function merely as an international extension of private rights under the patent statute, the statements of this court on the showing of injury required for the grant of an injunction in a patent infringement suit cannot be taken out of context and applied to the issuance of an exclusion order in a section 337 proceeding. Upon a patentee's proof of continuing infringement of a valid enforceable patent, "immediate irreparable harm is presumed" in connection with a request to a district court for injunctive relief. *Smith International, Inc. v. Hughes Tool Co.*, 718 F.2d 1573, 1581, 219 USPQ 686, 692–93 (Fed.Cir.), *cert. denied*, 464 U.S. 996, 104 S.Ct. 493, 78 L.Ed.2d 687 (1983). Congress has, however, required more for an exclusion order against imports, as recognized by this court unequivocally in *Textron*. The Commission is, thus, correct in its statement, "[S]ection 337 has elements in addition to the establishment of the existence of unfair practices such as patent infringement which must be satisfied before relief [i.e., an exclusion order] can be granted." *In re Certain Optical Waveguide Fibers*, slip op. at 21.

■■■ Corning cannot be faulted in its analysis that a patentee is entitled to benefit from all sales in the United States of products covered by its patent and that diversion of any sales by an infringer without payment of royalties is legally and in fact an economic loss to the patentee. However, a section 337 proceeding is not designed simply to protect a patent owner from loss. That truism is readily apparent from the statutory scheme which provides no protection for a patent owner in the absence of a domestic industry. The patentee in that situation suffers a real loss from infringing imports, at least to the extent of the loss of possible royalties, but is relegated to private remedies.

■■■ There is no question here that there is a domestic industry. However, to accept proof of a conceivable or actual loss of sales or profits of any amount by the patentee as sufficient proof of an effect or tendency to *substantially* injure the domestic industry would eliminate the "independent proof" of the "distinct injury requirement" held to be necessary in *Textron*. Even if one equates the patent owner with the domestic industry, the statutory injury provision speaks not of *any* injury but of an effect or tendency "to destroy or substantially injure." Clearly, Corning's argument that, as a matter of law, proof of even a single lost sale of a patented item establishes a sufficient level of injury must be rejected. Congress has directed that the remedy of section 337, involving as it does the act of the sovereign in closing our borders to certain imports, be exercised only in those instances where at least there is proof of a tendency to *substantially* injure the subject industry.

■■■ In *In re Von Clemm*, 229 F.2d 441, 444–45, 108 USPQ 371, 373–74 (CCPA 1955), the Court of Customs and Patent Appeals, a predecessor of this court,[6] approved the Commission's interpretation that a section 337 violation could be found based solely on the likelihood of future injury, that is, despite a finding that imports had had no "effect" on the industry at the time of the investigation. Thus, the Commission was correct in making a separate inquiry in this case with respect to the likelihood of future injury even though the record did not support a finding of past injury. A patent owner need not suffer actual past injury from infringing imports before pursuing the relief afforded by section 337. On the other hand, where the asserted injury is based on projections of future injury, *i.e.*, on a "tendency" to sub-

---

**6.** The decisions of our predecessor courts are binding precedent. *See South Corp. v. United States,* 690 F.2d 1368, 1370, 215 USPQ 657 (Fed. Cir.1982).

stantially injure, the record must establish the existence of relevant conditions or circumstances from which probable future substantial injury can reasonably be inferred. In *Von Clemm*, the Commission found such circumstances on the record before it and the court affirmed that finding under the substantial evidence standard. *Id.* at 443, 108 USPQ at 372. The significance of the case is the approval of the dual injury inquiry. No legal standard with respect to the threshold of injury required to establish a "tendency" to substantially injure is set forth.[7]

■ The argument is made here that in *Bally/Midway*, this court adopted the standard that unfair methods or acts that result in even "conceivable losses of sales" establish injury to the domestic industry.[8] That precise argument was also made in *Textron* and firmly rejected. *Textron*, 753 F.2d at 1028, 224 USPQ at 631. Even if this panel had the inclination to accept Corning's argument, we are bound by the court's holding in *Textron*. *See Kimberly-Clark Corp. v. Fort Howard Paper Co.*, 772 F.2d 860, 863, 227 USPQ 36, 37 (Fed. Cir.1985).

### B.

■ While Corning's proposed "test" for injury may be easily rejected as statutorily impermissible, it would be difficult to articulate positively what quantum of injury is legally required. Indeed, the question of quantum of injury is not one on which it would be appropriate for this court to put

forth a legal standard. The statement in *Textron* that "the infringer holds, or threatens to hold, a significant share of the domestic market in the covered articles or has made a significant amount of sales of the articles" gives guidance, but it is not definitive of the considerations relevant to the injury inquiry.

■ In any event, determination of injury is precisely the type of question for which the Commission has the expertise and has been given the responsibility to answer. Moreover, the determination of injury necessarily must be based upon the particular facts of each case.[9] In view of these considerations, the appropriate function of this court is to review an injury determination to decide whether substantial evidence supports the facts relied on and whether the Commissioner's determination, on the record, is arbitrary, capricious, or an abuse of discretion. In other words, we must decide "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971). "Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency." *Id.*

---

7. The phrase "conceivable losses of sales" appears in the House Report on the 1973 amendments to other parts of § 337 and makes references to the *Von Clemm* decision. House Comm. on Ways and Means, Trade Reform Act of 1973, H.R.Rep. No. 571, 93d Cong., 1st Sess. 78 (1973). The words do not appear in *Von Clemm*. Congress's characterization of the recognition in *Von Clemm* of future injury as "conceivable losses of sales" cannot be faulted but it cannot be construed to mean that Congress eliminated the separate injury inquiry in § 337 cases based on patent infringement. A loss of sales in the future is "conceivable" only if supported by evidence on that issue in the record, as in *Von Clemm*.

8. In *Bally/Midway*, the Commission had before it evidence that the foreign markets were satu-

rated, the foreign manufacturers had both a large surplus inventory and a substantial capacity to produce more infringing games, and that the foreign manufacturers had sent numerous solicitations to potential U.S. customers. 714 F.2d at 1124–25, 219 USPQ at 102–03. That evidence established the existence of relevant conditions or circumstances from which probable future substantial injury could reasonably be inferred.

9. Corning's argument that the ITC decision here is inconsistent with precedent in the ITC with respect to the required threshold of injury does not stand up under scrutiny. As indicated, injury determinations are highly fact specific. None vitiates the separate injury inquiry.

## V.

 Turning to Corning's arguments that past injury was proved,[10] Corning asserts that Sumitomo's past sales have caused substantial injury because the amount of Sumitomo's sales has totalled several million dollars. Corning asserts that this amount *ipso facto* meets the "test" of *Textron* that an injury is shown where sales are of a "significant amount." As indicated above, the amount of sales is highly relevant to the injury determination; however, whether the amount is "significant" cannot be determined by the dollar amount *in vacuo.* "Significant" requires some further inquiry once the amount of sales is found. Corning's comparison of the dollar amount of Sumitomo's sales to SpecTran's investment in its plant and to ITT's profit figures is unpersuasive as a basis for deciding whether the amount of the infringing sales is "significant." Conversely, the ALJ's comparison of Sumitomo's sales with the total sales of fiber in the U.S. market, as well as with the volume of sales of Corning and its domestic licensees, is meaningful and the conclusion that Sumitomo's sales were *de minimis* in those contexts is rational. Thus, there is no basis for holding that this part of the Commission's decision is arbitrary or capricious.

Corning asserts that a more lenient standard of injury or a lesser quantum of proof should be required for "newly emerging, high technology industries" than for stable, mature industries. In such new industries, "excess demand over supply" and "declining prices" are normal growth patterns, per Corning, and should not give Sumitomo "a right to take advantage of rising demand to make inroads into the U.S. markets and to establish customer/supplier relationships which ultimately enable Sumitomo to seize a bigger share of the market as that market matures." Also, Corning argues, lost sales retard the patentee's growth, the patentee's recoupment of research and development costs and its

achievement of full efficient operation. These are, of course, valid propositions, but they do not answer the question whether the sales by Sumitomo were so significant that they have had any of those effects. In this connection, the ALJ found not only that the domestic industry did not decline but also that Corning and its licensees could not satisfy demand for the product, despite increasing their capacities; that they had put customers on allocation; and, indeed, that they were themselves importing fiber in order to fill orders. Thus, the ALJ could not say that a sale by Sumitomo represented a lost sale to the domestic industry. In addition, the presence of non-licensed United States producers of fiber and of a licensed foreign producer (NTL) whose products were permitted by Corning to be sold in the United States by its subsidiary (NTI), also tended to negate Corning's position that Sumitomo's sales and market share were gained at the expense of the *domestic* industry. Thus, the evidence, per the ALJ, did not establish a nexus between Sumitomo's sales and any past injury to the domestic industry.

 Corning argues that NTI/NTL were placed on the wrong side of the injury equation—that their licensed sales are part of the domestic industry even though the product is manufactured abroad. The Commission's interpretation that only operations within the United States constitute the domestic industry is reasonable and is supported by the precedent of this court.[11] *Schaper Manufacturing Co. v. U.S. International Trade Commission*, 717 F.2d 1368, 1370, 219 USPQ 665, 667 (Fed.Cir. 1983) and cases cited therein. Any other view would mean that a patent owner could merely license the importation of products from abroad and claim injury within the meaning of section 337 to exclude unlicensed imports, despite having contributed little or nothing in the way of opportunities for employment of our industrial workers,

---

10. The Commission adopted the ALJ's findings and conclusions on past injury. We will therefore refer to the ALJ and his decision in this part of the opinion.

11. The Commission would have taken the U.S. distributor's operations into consideration as part of the domestic industry but for lack of evidence of the value added by the importer to the products.

one of the stated objectives of the Tariff Act of 1930. Tariff Act of 1930, ch. 497, preamble, Title III, 46 Stat. 590 (1930) ("An Act To ... encourage the industries of the United States, to protect American labor....") Moreover, we reject Corning's argument that *Schaper* is distinguishable on the ground that the foreign manufacturer and U.S. distributor would constitute only part, not the entirety of the domestic industry. The Commission held otherwise and the distinction appears to us to be a difference without significance. Thus, we uphold the Commission's refusal to include the capacity of the licensed Canadian manufacturer in considering the ability of the *domestic industry* to meet demand or the loss of sales of imported goods by NTI.

■ Corning argues that competitors who allegedly infringe its patents also constitute part of the domestic industry operating under its patents, and, thus, their loss of sales should have been taken into account in determining past injury. However, the Commission is not in a position to try a multiplicity of infringement actions against *domestic* producers as part of an investigation into unfair trade practices in the importation of goods. On the record here, its decision to exclude the alleged domestic infringers from the domestic industry operating *under* the patent is not arbitrary or capricious. Nor has this factor, which "complicated" the evaluation of injury, been shown to be decisive in any way.

■ Similarly, other factors specifically mentioned by the ALJ, *e.g.*, the aggressive

pricing policy of other, much larger, licensed competitors, were seen as the cause of the reduction of domestic prices of optical fiber. While noting three isolated instances in which Sumitomo had underbid a cable competitor on a particular contract, (Sumitomo was not uniformly the low bidder), the ALJ found that such isolated instances would not have caused the massive nationwide, across-the-board price reductions in the domestic industry. That finding is supported by substantial evidence.

■ Corning also claims injury by loss of royalties from Sumitomo. This is rather a transparent attempt to clothe in different garb the argument that patent infringement *per se* constitutes injury. Also, we must note that the damage here, assuming infringement, is not a total loss of royalties but deferment of payment. The record indicates that Corning is pursuing an infringement action against Sumitomo. Civil Action No. 84 Civ. 9155 (S.D.N.Y.).[12] Corning's coffers will be justly enriched by damages no less than a reasonable royalty if it is successful in that action. 35 U.S.C. § 284 (1982).

## VI.

With respect to Sumitomo's sales having a tendency to substantially injure the domestic industry in the future, the only projected major change in circumstances foreseen by the Commission was Sumitomo's expected production of optical fiber in the United States at its SERT facility in North Carolina beginning in mid-to-late

---

**12.** The action has been stayed pending resolution of this appeal. We question this practice which appears to cause unnecessary delay in resolution of the basic dispute between the parties. Here, non-patent issues are dispositive of this case. Moreover, the ITC takes the position that its decisions have no *res judicata* effect in such litigation. *Accord Union Mfg. Co. v. Han Back Trading Co.*, 763 F.2d 42, 226 USPQ 12 (2d Cir.1985). Although this question has not been addressed by this court, the legislative history of the Trade Reform Act of 1974 supports the Commission's position:

The Commission is not, of course, empowered under existing law to set aside a patent as being invalid or to render it unenforceable, and the extent of the Commission's authority

under this bill is to take into consideration such defenses and to make findings thereon for the purposes of determining whether section 337 is being violated.

\* \* \* \* \* \*

The Commission's findings neither purport to be, nor can they be, regarded as binding interpretations of the U.S. patent laws in particular factual contexts. Therefore, it seems clear that any disposition of a Commission action by a Federal Court should not have a res judicata or collateral estoppel effect in cases before such courts.

S.Rep. No. 1298, 93d Cong., 2d Sess. 196 (1974), U.S.Code Cong. & Admin.News 1974, 7186, 7329.

1985.[13] The expected capacity from that plant is projected to exceed five times the amount sold by Sumitomo between 1980–1984. Corning argues first that SERT and Sumitomo's imports will have a "synergistic relationship—imports spurring SERT sales and SERT increasing imports." Corning also points to evidence of an "understanding" between SERT and a prospective purchaser of cabled fiber which it claims would not have come about had Sumitomo "not proven itself to [the customer] through past sales." Finally, it is argued that, as a result of Sumitomo's sales and marketing efforts in the United States to date, Sumitomo has unfairly gained a "toe-hold" in the domestic market from which it can more easily increase its share in the future.

 The Commission considered the first argument unsupported by evidence and Corning merely urges us to adopt its view, which we decline to do. The Commission refused to consider the evidence of prospective sales by SERT, holding that "only sales of imports ... can be taken into account in finding a tendency to substantially injure." We find this interpretation of the statutory injury requirement reasonable. Further, no error is shown in the findings that any increase in Sumitomo's market share would be largely attributable to Sumitomo's SERT facility.

### VII.

Numerous additional disagreements with the Commission's factual findings appear in appellant's brief with citations to evidence to the contrary in the record. No attempt is made, however, by Corning's counsel, to meet its burden on appeal of showing that a particular finding is unsup-

ported by substantial evidence, that is, that no reasonable person could make the particular finding considering the evidence offered by *both* sides.[14] Rather than dismiss these factual challenges out of hand because of the inadequacies of their presentation, the court has attempted to review the voluminous record on its own. Not only does it impose on the time of the court to have to engage in this exercise, but also the chances of a successful appeal are diminished. The court cannot ever become as familiar with the record as counsel for the parties.[15]

In any event, the factual challenges of Corning not specifically addressed herein have been considered. All findings are affirmed, appellant not having carried its burden on appeal of persuading this court that any findings are unsupported by substantial evidence.

Finally, Corning's assertion of procedural error in that the Commission refused to consider post-hearing evidence is meritless.

### VIII.

### *Conclusion*

The factors considered by the Commission in its determination of no injury in this investigation are relevant. Its findings are supported by substantial evidence. None of the usual indices of injury, *e.g.*, declines in sales, production, investment, profits, or employment, are present. Similarly, its evaluation of the future levels of imports and their likely effect is amply supported by the record.

As the Commission stated, its decision here does not sanction the infringement of

---

**13.** Corning brings to our attention that Sumitomo's target dates have not been met.

**14.** In addition, statements are made by Corning as facts, citing some evidence of record but failing to indicate whether the Commission accepted the evidence as establishing the fact or disagreed with it. In this case, the ALJ made 718 numbered findings, many of which are paragraphs of sub-findings; his opinion covers 295 pages. The Commission's opinion (reviewing only tendency to injure) is 21 pages. The court experienced great difficulty in determin-

ing what facts Corning actually challenged since challenged factual findings were presented, in many instances, in the same manner as unchallenged factual findings.

**15.** The confidential appendix consists of 18 volumes, 3 of which are in Japanese. The non-confidential appendix consisting of 5 volumes and the non-confidential briefs served absolutely no purpose in this case since they are incomprehensible due to deletions. The court rules do not require such waste.

U.S. patents by importers, nor does the affirmance by this court. This court, which hears all appeals in both civil infringement actions and section 337 investigations, cannot ignore that Congress established different standards for injunctions and for exclusion orders.

The determination of the International Trade Commission that no violation of section 337 resulted from the importation from Japan and sale in this country of certain optical waveguide fibers by Sumitomo is affirmed. The patent issues being mooted by affirmance on the grounds of no injury, we vacate the portion of the Commission's decision dealing with those issues.

AFFIRMED IN PART; VACATED IN PART.